John Johnson, Respondent, v. Barnes & Morrison Building Company et al., Appellants.

St. Louis Court of Appeals, December 7, 1883.

1. Mechanic's Liens—Sub-contractor—Lien Accounts.—A lien is not vitiated because the account filed by a sub-contractor includes charges for work not included in the contract, but which would be a proper subject of lien if included in the contract, where the improper items are severable from the other parts of the account.

2. —— Agency—Notice of Lien.—A resident person, who is charged by a non-resident owner with the duty of approving all bills or demands prior to their payment, is the owner's agent, and service of notice of intention to file a lien is sufficient, under the statute.

3. Appellate Practice—Weight of Evidence.—An appellate court will not vacate a verdict, supported by substantial evidence, on the ground that the opposing evidence greatly preponderates.

Appeal from the St. Louis Circuit Court, Daniel Dillon, Judge.

*Affirmed.*

J. L. & F. P. Blair, for the appellants :   (1) The

account filed as the basis of the lien is defective; it is not a "just and true account," as required by the statute. Rev. Stat., sect. 3176; *Nelson v. Withrow*, 14 Mo. App. 270, 276, par. 2; *Edgar v. Salisbury*, 17 Mo. App. 271; *Kershaw v. Fitzpatrick*, 3 Mo. App. 575; *Murphy v. Murphy*, 22 Mo. App. 18; *Schulenburg v. Hawley*, 6 Mo. App. 34; *Kling v. Mo. Ry. Const. Co.*, 7 Mo. App. 410; Phillips on Mechanics' Liens, 352; *Lowis v. Cutter*, 6 Mo. App. 54; *Barker v. Berry*, 8 Mo. App. 446; *Heinrich v. Carondelet Society*, 8 Mo. App. 587; *Henry v. Rice*, 18 Mo. App. 510; *Schulenburg v. Prairie Home, etc.*, 65 Mo. 295; *McWilliams v. Allen*, 45 Mo. 573-5, cited and approved; *Coe. v. Ritter*, 86 Mo. 277-87. (2) The service of the notice was defective, because it is not shown that the persons on whom it was served were the agents of the owners; the circuit court erred, therefore, in not excluding the notice from the jury. Rev. Stat., sect. 3190; Wharton on Agency, sect. 178; *Hayward v. Ins. Co.*, 52 Mo. 581; *Goodloe v. Godley*, 21 Miss. 233; *Bank v. Downing*, 16 N. H. 187; *Lionberger v. Mayer*, 12 Mo. App. 575; *Alexander v. Rollins*, 14 Mo. App. 109-117; *Gentry v. Ins. Co.*, 15 Mo. App. 215; *Anderson v. Volmer*, 83 Mo. 403; Story on Agency, sect. 140; *McCormick v. Wheeler*, 36 Ill. 114; *Bank v. Schaumberg*, 38 Mo. 228; *Ins. Co. v. Ins. Co.*, 10 Md. 517; *Henry v. Bunker*, 22 Mo. App. 650; *Towner v. Remick*, 19 Mo. 209.

TAYLOR & POLLARD, for the respondent: The provisions of the law are to be liberally construed to uphold the lien, and unfriendly strictness and mere technicality avoided. *Putnam v. Ross*, 46 Mo. 338; *Oster v. Rabeneary*, 46 Mo. 595; *Dewitt v. Smith*, 63 Mo. 263; *Hassett v. Rust*, 64 Mo. 325; *Morgan v. Railroad*, 76 Mo. 172; *Ransom v. Sheehan*, 78 Mo. 673; *Hayden v. Wulfing*, 19 Mo. App. 357. The authority of an agent is to be determined by the nature of his business, and is co-extensive with the requirements of such

business. *Gentry v. Ins. Co.*, 15 Mo. App. 215; *Liver-more v. Blood*, 40 Mo. 48; *Franklin v. Ins. Co.*, 52 Mo. 461; *Brooks v. Jameson*, 55 Mo. 512; *Edwards v. Thomas*, 66 Mo. 468; 2 Greenleaf on Evidence, sects. 60 and 61; Story on Agency, sects. 45 and 50; *Amory v. Kaunoffsky*, 117 Mass. 353.

Lewis, P. J., delivered the opinion of the court.

The plaintiff, as a sub-contractor for plastering, under the contract made between the defendant, Barnes & Morrison Building Co., as principal contractor, and the defendants, Fairman Rogers and Isaiah V. Williamson, as owners, for repairs and alterations done on the St. James Hotel, in the city of St. Louis, sues for three hundred and fifty dollars, the value of his work, and a mechanic's lien on the property. The verdict and the judgment were for the plaintiff.

The account filed with the lien is in the following terms:

"1882.

"Dec. 29th.   To furnishing material and doing the work of plastering the south or party wall of the St. James Hotel, including patching of the ends of partitions and ceilings, and joining same in basement, 1st, 2nd, 3rd, 4th and 5th stories, viz: 757 14-100 yards of plastering at 43 8-10 cents ............$331.52

52 8-10 linear feet stucco cornice at 35 cents ..................... 18.48

$350.00 "

The defendants object that this account is fatally defective, and insufficient to sustain the lien. One point of objection is that it includes work done in the basement; whereas the testimony shows that such work was not provided for, either in the principal contract, or in

the sub-contract. *Nelson v. Withrow* (14 Mo. App. 270); *Edgar v. Salisbury* (17 Mo. 271), and *Murphy v. Murphy* (22 Mo. App. 18), are relied on in support of this objection. In each of those cases a charge for work or services on account of which the law gives no lien, was so mixed in and blended with other items upon which a lien might be based, that it could not be perceived from the account what proportion was chargeable for each. The owner of the property, therefore, could not know what amount of payment would release it from the lien. In the present case, the objectionable item is not one from which the law would withhold a mechanic's lien, if properly charged. It can not be intended by the law that the entire lien must fail, if the mechanic should not make satisfactory proof of an insignificant item in his account. The reason of the rule in *Nelson v. Withrow*, fails, if the unproved item be one upon which a lien might attach. The owner of the property may litigate or not, as he pleases, as to that item, and is at least fully informed, on the face of the paper, what amount will discharge the lien, as lawfully claimed by the mechanic. All this assumes, of course, that the item is separable from the other items which are properly proved. This court said, in *Kershaw v. Fitzpatrick* (3 Mo. App. 575), "Where an objectionable item can be separated from the other part of the account, the lien may stand." The basement work was separated by the proofs, in this case, and was accurately shown to have amounted to $4.66, which amount was withdrawn from the plaintiff's claim by an instruction, with the plaintiff's consent. That the separable nature of an objectionable item will save the lien as to the rest which are not open to objection, was long ago settled in *Edgar v. Salisbury* (17 Mo. 273). We can not consider the defendants' objection in this instance as competent to defeat the plaintiff's lien.

A similar objection is made to the item of stucco cornice. This item is separable from the others, on the

face of the account. But it is not at all clear that the work so described was not a part of the plastering contemplated in the contracts. The testimony shows that the wall which was to be plastered had been removed two feet further south than where the old wall stood. The contract required that "all connecting divisions" should be plastered two coats, one of brown mortar and one white, "hard finished, all in the best manner." It is not assuming too much to say that cornice work is generally understood to be a part of the plasterer's business; and, if there was a cornice around the three other sides of the room, it is difficult to see how the connecting divisions could be completed "in the best manner" without extending the cornice, and perhaps carrying it along the fourth side. But, however this may be, in point of fact, the jury appear to have found, under the plaintiff's instruction, that all the work was done under the contract, excepting the basement work; and no attempt was made by the defendants to have the item of cornice work eliminated from the plaintiff's claim. They do not undertake even here to make their objection to this item available, except for the purpose of defeating the entire lien. This, as we have already shown, is not admissible, consistently with what we have above said in connection with the work in the basement.

The defendant owners are non-residents. The plaintiff's notice of lien was served on Charles T. Farrar and James L. Blair, as agents of the owners. Farrar was a real estate agent, having in charge the hotel property for the purpose of collecting rents and paying taxes and insurance. The character of Blair's agency is shown in the following extracts from the testimony.

1. Examination of Mr. Blair :

Q. "Did you examine any of the bills that were paid before they were paid? A. I did. I think I told you just now that was my business."

Q. "That it was your business to examine the bills? A. Yes, sir."

Q. "Did you examine the bills of Barnes & Morrison? A. As I told you awhile ago, the bills were presented to me through Mr. McElfatrick, the supervising architect, from time to time—amounts, not bills. The contract was drawn so that payments should be made at certain times. Upon McElfatrick certifying that the time had arrived when such payments were due, each certificate was sent to me, as the attorney of these gentlemen, and I examined it and compared it with the terms of the contract."

Q. "Who were you the attorney of? A. Williamson and Rogers."

Q. "When did that kind of employment begin? when did you begin to supervise and look over the certificates issued by the architect? did that kind of employment begin at the institution of the improvement in the hotel? A. Yes, sir; I drew the contract."

Q. "Before any of the work was done? A. Yes, sir."

Q. "And before any payments were made or certified by the architect, you looked over the matter and approved it? A. Yes, sir; if it was correct I approved it."

Q. "The understanding was that you were to approve the bills before they were paid, was it not? A. Yes, sir."

Q. "Any certificate issued by the architect for work done upon that building necessarily passed through your hands before it was paid? A. Yes, sir."

2. Examination of Mr. McElfatrick, the architect and superintendent:

Q. "Did Mr. Blair represent to you that he was the attorney to see whether the building was completed or not? A. I think he did, sir."

Q. By Mr. Blair. "Was it not my duty, as far as I was concerned, to find how much money the contractors were entitled to under the contract? A. Yes, sir."

Q.  "That was all I had to do in the matter, was it not?  A.  Yes, sir; that is just what I tried to state."

Without undertaking to determine the sufficiency of Mr. Farrar's agency to validate the service of the notice upon him, let us inquire into the effect of the service upon Mr. Blair.  The general rule is, that notice given to an agent while his agency exists, and coming within the scope of his authority, is notice to the principal.  *Hayward v. Ins. Co.*, 52 Mo. 181. Vories J., elucidates this with the remark that, " Generally it is sufficient to notify an agent whose proper business is to attend to the matters in reference to which the notice is given."  He also quotes from Story on Agency, section 140 :  " Upon a similar ground notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from, or is at the time connected with the subject matter of his agency ; for, upon general principles of public policy, it is presumed that the agent has communicated such facts to the principal."  Now, the precise matter here, with reference to which the notice of the plaintiff's claim was given, was his demand of payment for work· done under the contract.  The question submitted by it was, whether the claim should be paid, or resisted ?  In other words, whether the demand should be legally contested, or should be approved and paid without a contest ?  This question was closely connected, or rather, identified with the subject matter of Mr. Blair's agency ; since he was to " approve the bills before they were paid," and was to " find how much money the contractors were entitled to under the contract."  It may be objected that, according to the testimony, Mr. Blair's agency was confined to the approval or disapproval of bills certified by McElfatrick and Son, the superintendents.  True, his proceedings were usually limited to such certified bills, but his own statements show that his authority comprehended all bills for work done under the contract; and, as to this, there was no lack of privity between the

plaintiff sub-contractor and the principal contracting parties, with their superintendents. The defendants contend that the superintendents were the only proper agents of the owners upon whom the notice of lien claim should have been served. But the superintendents had nothing to do but to look after the manner and quality of the work done, and to certify as to these facts. They had nothing to do with questions of payment, which were reserved for the decision of Mr. Blair. This gentleman's relations with the owners were, at least, such as should justify a presumption that, when the notice of the plaintiff's claim was served upon him, he, acting within the scope of his agency, "communicated the facts to his principals." The statute (Rev. Stat., sect. 3190) requires a sub-contractor to give notice "to the owner, owners, or agent, or either of them, that he holds a claim against such building or improvement," etc. We think that, as to the person served, this law was substantially complied with, if Mr. Blair's agency had not ceased at the time of the service. As to this condition, it is sufficient to say that nothing in the record indicates a cesser of his agency before all demands for work done under the contract were passed upon or settled. The verdict in this case shows that the plaintiff's claim was not in that category, at the time of the notice.

Counsel for the defendants maintain with much ability their proposition, that the preponderance of evidence in this record against the verdict and the instructions given, is such as to raise a presumption of gross prejudice or wilful disregard of the testimony, on the part of the jury, and so to call upon us for a reversal of the judgment on that ground alone. The point of this proposition lies in the testimony about the date upon which the plaintiff's last work was done. The lien was filed on April 27, 1883. So that, in order to a compliance with the statutory limit, the last work must have been done on or after December 27, 1882. Six several witnesses testified to facts which were inconsistent

with the possibility that any work was done under the contract after August or September, 1882. The plaintiff, however, swore that he did plastering on the first story of the new south wall, under his sub-contract, on the twenty-ninth or thirtieth of December, 1882 ; that he was present every day of the last week in December and saw the work being done by his employes; that he took his tools away on New Year's Eve, and that he had been much delayed by the frequent necessity of suspending his work for the accommodation of the hotel keeper and his guests, as he was required to do, by the terms of his contract. Alfred Johnson testified that he worked for the plaintiff in finishing up the plastering during the Christmas week of 1882, and that the white coating of the new south wall on the first story was done as late as the twenty-ninth or thirtieth of December; that the tools were not taken away until New Year's Eve; a fact about which his memory was clear, because of the ending of his apprenticeship to the plaintiff on the same day. There were many points of direct conflict between the testimony of these two witnesses and that given by the others ; and it may be remarked generally, that corroborations were the more frequent on the side of the defendants. But we do not feel authorized by this state of the record to assume that the jury were controlled by prejudice, or that they wholly disregarded the testimony before them. Nor do we find in it any sufficient ground for a departure from the ancient appellate dogma against passing upon the weight of evidence. The jury were the proper judges of the accuracy or the conscientiousness of the witnesses, and the judge before whom the cause was tried was better qualified than we can be, to say whether or not the jury performed their duty in a spirit of fairness and justice.

The defendants contend that the petition omits, contrary to (Rev. Stat., sect. 3179) certain statements of fact which were necessary for the securing of a lien. The petition states the original contract, and that the

work done by the plaintiff was included in the same; but it is objected that there is no statement that the work was done under and by virtue of the original contract. We think that the fact required substantially appears in the allegation made, and that, if this were otherwise, the defect would be cured by the verdict. The same may be said of the alleged omission of a statement in the petition, that the notice described the premises to be affected by the lien. A fair interpretation of the language used does include such a statement. But, if this be questioned, there remains the fact that the notice itself was in evidence, and that it contains in full the proper description. The verdict would, therefore, cure the defect, if any existed.

We find in this record no good reason for disturbing the conclusions reached in the circuit court, and the judgment is, therefore, affirmed. All the judges concur.

