Argued February 26; decided April 27, 1896.

## ALLEN v. ELWERT.

[44 Pac. 824.]

1. MECHANICS' LIEN — STATEMENT OF AMOUNT DUE — CODE, § 3673. — Where, under a contract with the owner of a building, material of less value than that specified in the contract was furnished, the fact that the notice of lien therefor claimed the contract price for. the material without any deductions for such difference, did not render the notice defective, under section 3673, Hill's Code, requiring it to contain a true statement of the demand after deducting all just credits, where the owner knowingly accepted and used the material, and the failure to make the deduction was unintentional: *Rowland* v. *Harmon*, 24 Or. 529, approved and followed.

2. AGENCY — PERSON TO WHOM MATERIALS WERE FURNISHED — CODE, § 3673.— Where material is furnished for a building under a contract directly with the owner, a notice of lien stating that such material was furnished to the owner is sufficient, though it was actually ordered and received by an agent of the owner. In such case the act of the agent is the act of the principal.

3. EVIDENCE OF USE IN BUILDING — CODE, § 3669.— Evidence that material contracted for was delivered at a building, and that a large part of such material was used in the building, without any evidence that any of it was not so used, is sufficient to show that it was all used in the construction of the building, within section 3669 of Hill's Code, giving a right of lien for material furnished "to be used in the construction, alteration, or repair of a building." This concedes but does not decide that materials must be actually used in the building to sustain a lien.

4. REQUIREMENTS OF NOTICE OF LIEN — CODE, §§ 3669, 3673.— Section 3669 of Hill's Code gives a lien to one furnishing materials "to be used in the construction * * * of a building," but the lien so given is dependent upon the claim provided for by section 3673, and when a claim is properly filed containing all the requirements of that section, the question whether the claimant's demand will in fact support the lien is a matter of pleading and proof. The claim need not contain anything beyond the requirements of the statute; therefore it need not state that the material furnished was actually used in the building.

5. IMMATERIAL VARIANCE IN DATES OF FURNISHING MATERIALS.— Where a notice of lien alleged that the material was delivered between certain dates, proof that a small part of it, though charged as delivered within, was actually delivered prior to, the time specified, the variance was immaterial.

6. NOVATION — CREDIT ON LIEN.— Where the owner of a building, by agreement with a material man and contractor, paid, out of money due the contractor, the account of the material man against him for material furnished for the building, she could not claim as a credit a deduction to which the contractor was entitled for material returned.

7. LIEN FOR MOVING A HOUSE — CODE, § 3669.— Moving a building a short distance on the same lot and raising it are within the protection of a statute giving a lien for work and labor performed in the "alteration or repair" of a building, if such moving is in furtherance of a general plan for the alteration and repair of the building.

8. LIEN FOR USE OF TOOLS AND HAULING SAME — CODE, § 3669.— No lien can be claimed against a building for the use of tools and appliances used in moving and raising it, or for transporting them to

and from the building, under a statute giving a lien for materials furnished "to be used in the construction, alteration, or repair" of a building.

9. LUMPING CHARGE FOR LIENABLE AND NONLIENABLE ITEMS.— Where lienable and nonlienable items are included in one contract for a specific sum, or are made the basis of a lump charge, the benefit of the lien law is lost. But where a demand, honestly made, consists of several distinct items, separately charged so that they can be segregated, some of the items being lienable and others not so, the lien will be enforced as to the lienable charges: *Williams* v. *Toledo Coal Company*, 25 Or. 426, and *Harrisburg Lumber Company* v. *Washburn*, 29 Or. 150, approved and followed.

10. EQUITY JURISDICTION — DECREE IN MECHANICS' LIEN CASES.— An equity court is entirely without jurisdiction to enter a judgment or decree in a mechanics' lien case against the property owner in excess of the amount for which the lien is allowed. Its power ends with the ascertainment of the amount of the lien and its enforcement: *Ming Yue* v. *Coos Bay Railroad Company*, 24 Or. 392, approved and followed. And this is true even where the contract is directly with the property owner.

From Multnomah; LOYAL B. STEARNS, Judge.

This is a consolidated suit to foreclose four mechanics' liens against the property of Mrs. J. B. Elwert, the defendant and appellant herein. The East Portland Mill and Fixture Company having filed a complaint for the foreclosure of two liens in its favor, for two hundred and forty-one dollars and forty cents and one hundred and five dollars and thirty cents, respectively, for materials furnished to the appellant to be used and which were actually used in the alteration and repair of her building, the respondents E. K. Jones and Company and William O. Allen and Brother, who had previously instituted separate suits to foreclose mechanics' liens on the property of defendant, appeared as defendants therein, and set up their respective liens by answers to said complaint. The suits were thereafter consol-

idated, testimony taken, arguments heard, findings
of fact and conclusions of law filed, and a decree
entered allowing the East Portland Mill and Fixture
Company its liens for two hundred and twenty-five
dollars and sixty cents and one hundred and five
dollars and thirty cents, respectively, the lien of E.
K. Jones and Company for one hundred and eighty-
one dollars and sixty-four cents, and the lien of
Allen and Brother to the amount of eight hundred
and fifty-three dollars. From this decree Mrs. El-
wert appeals.                          MODIFIED.

For appellant there was a brief by *Messrs. Edward
Mendenhall,* and *Watson, Beekman and Watson,* with
an oral argument by *Messrs. Mendenhall* and *Benja-
min B. Beekman.*

For Jones and Company there was a brief and
an oral argument by *Mr. Dell Stuart.*

For the East Portland Mill Company there was a
brief by *Messrs. Bronaugh, McArthur, Fenton and
Bronaugh,* with an oral argument by *Mr. William D.
Fenton.*

For William O. Allen and Brother there was a
brief by *Messrs. Glen O. Holman* and *Xenophon N.
Steeves,* with an oral argument by *Mr. William D.
Fenton,* and *Mr. Steeves.*

Opinion by MR. CHIEF JUSTICE BEAN.

For convenience, the respective liens involved in
this suit will be considered separately, and in the

following order: *First*, the lien of the East Portland Mill and Fixture Company for two hundred and forty-one dollars and forty cents; *second*, its lien for one hundred and five dollars and thirty cents; *third*, the lien of E. K. Jones and Company; and, *fourth*, the lien of W. O. Allen and Brother.

1. It is claimed that the notice of lien of the East Portland Mill and Fixture Company does not contain a true statement of its demand after deducting all just credits and offsets, as required by section 3673 of Hill's Code. The aggregate amount of the demand, as stated in the notice, is nine hundred and ninety-one dollars and forty cents, of which seven hundred and seventy dollars is claimed under a special contract for mill work material furnished for said building according to certain plans and specifications, and two hundred and twenty-one dollars. and forty cents for material alleged to have been furnished in addition thereto, at the instance and request of Mrs. Elwert. Deductions for cash payments are credited to the amount of seven hundred and fifty dollars, leaving a balance of two hundred and forty-one dollars and forty cents, for which the lien is claimed. It is admitted that all the payments made by Mrs. Elwert to the company are properly credited, but it is contended that the lien is void because the claimant did not deduct from the amount claimed the difference between the value of the sash pulleys and carpet strips actually furnished by plaintiff and those specified in the contract. The court found that the appellant should be

credited with fifteen dollars and eighty cents on this account; but it clearly appears from the evidence that the sash pulleys and carpet strips furnished by the mill company were knowingly accepted and actually used by her, and that the failure to make such deduction was not fraudulent or intentional. It was simply an honest mistake as to the value of the materials furnished, and would not invalidate the lien in any case, and certainly not in a case like this, where the lien is sought to be enforced against the person to whom the materials were actually furnished, and with whom the claimant contracted: *Rowland* v. *Harmon*, 24 Or. 592 (34 Pac. 357); 2 Jones on Liens, § 1408.

2.   It is also claimed that the lien is defective because it does not state the name of the person to whom the materials were furnished. The notice of lien states, and the complaint alleges, that the materials were furnished and delivered to Mrs. Elwert at her special instance and request. The evidence shows that they were furnished on her personal account, and were ordered either by herself or her foreman or agent in charge of the work, and were delivered at the building, and received and used therein. Under these circumstances, she was properly named in the lien notice as the person to whom the materials were furnished, and it was not necessary to state the name of the agent who ordered each article, or to whom it was actually delivered. Where a lien is claimed against the property of one person for materials furnished to and on account of

another, the law requires the notice of the lien to state the name of the person to whom they were furnished; but where a lien is sought against the property of a person with whom the contract was made, and to whom the materials were furnished, it is sufficient to give the name of the owner as the person to whom they were furnished, although in fact they may have been ordered or received by an agent or employé of such owner.   In such case the act of the agent is the act of the principal.

3.   It is next contended that it does not appear from the evidence that the material for which the lien is claimed was actually used in the building liened.   Conceding, but without deciding, that under the mechanics' lien law of this state materials furnished for the building must be actually used in its construction, alteration, or repair, in order to become the foundation of a lien upon it, we think the evidence in this case is sufficient to support the findings of the trial court sustaining the lien.   It perhaps does not affirmatively and specifically appear that each and every separate article furnished to be used in the building was actually so used, but it does appear that upon the appellant's order they were delivered at the building for that purpose, were received by her, and, as to the greater part of them, used in the building.   And there is nothing to contradict this, or even tending to show that any of the materials so delivered were used elsewhere, or for any other purpose, or that they did not, in fact, go into the building.   The proof is

therefore as complete and specific upon this point as it could well be, unless the lien claimant is required to have some person present during the construction of the building to keep a daily and hourly record of the materials used, and this the law does not require. "To require direct and positive testimony," says Mr. Justice BREWER, "that as to each specific article delivered, that it was in fact used in the buildings, would make the mechanics' lien law more of a burden and a trap than a blessing and a help. When materials are contracted for use in a proposed building, when they are delivered in pursuance of such contract, and when the building is in fact completed, and there is no testimony tending to raise even a suspicion that the materials therefor were elsewhere obtained, or that those contracted for were not used therein, and especially when some of the materials are shown to have actually entered into its construction, it is fair to conclude and say that such materials did in fact go into the building, and that the seller has a mechanics' lien therefor": *Rice* v. *Hodge*, 26 Kan. 170. Under these circumstances, the proof is amply sufficient to support the lien, even under the rule of law contended for by the defendant.

The contention is also made that the articles charged for by the fixture company as extras are in fact included in the special contract between the company and the appellant. This contract is in writing, and was signed by Mrs. Elwert and the fixture company in the presence of Carrie M. Elwert and G. H. Vore, and is an agreement to furnish

the mill work for said building for a certain sum, in accordance with certain plans and specifications, which were delivered to the mill company at the time the contract was made, and upon which its manager, Mr. Lambert, made the estimate of the value of the work required. The plaintiff offered in evidence what it claims to be the specifications delivered to it at the time the contract was made, and under which the work was to be performed, while the appellant offered in evidence what she claims to be a copy thereof. These two specifications are materially and substantially different. Those offered by the appellant, and which she claims are the specifications for the work agreed to be furnished by the mill company, call for much more work than plaintiff's copy. The court below found that the specifications offered by the mill company were the true ones, and that the work charged as extra was not included therein, and is, in our opinion, fully sustained by the evidence. The appellant lays much stress upon the fact that the specifications offered by her appear to have been signed by the East Portland Mill and Fixture Company by H. M. Lambert; but to our mind the evidence is very clear that they were not signed by him or any one else authorized to bind the company. Mr. Lambert, as well as Mr. Vore, who was present when the contract was made and the papers signed, both so testify, and witnesses familiar with Mr. Lambert's handwriting testify that the signature is not in his handwriting, and this is borne out not only by the physical evidence of the signature itself, which

shows on its face to have been first written in pencil and then traced in ink, but by a comparison with his genuine signature in evidence. It is apparently an attempt by some one to manufacture evidence for this case, but it is so bunglingly and unskillfully done as to carry on its face intrinsic evidence of its fictitious character. This disposes of all the objections urged to the validity of the first lien of the mill company for two hundred and forty-one dollars and forty cents, and the conclusion of the trial court, holding the lien valid for the sum of two hundred and twenty-five dollars and sixty cents, is affirmed. The only question in reference to the lien of the fixture company for one hundred and five dollars and thirty cents is one of fact, and, without stopping to detail the evidence, we think it clearly sufficient to support the findings of the court below sustaining the lien.

4. Three objections are urged to the lien of E. K. Jones and Company: *First*, that the lien notice is fatally defective because it does not state that the materials furnished by them were actually used in the building; *second*, that there is a variance between the amount of the claim as stated in the notice and the proof; and, *third*, that the appellant is entitled to a credit for an overpayment made to the claimants prior to the furnishing of the material for which the lien is claimed. The notice states that the material for which the lien is claimed was furnished by the claimants to be used in the construction of the building liened, and the

proof and the allegations of the complaint show that
they were in fact so used. This we think is suffi-
cient under the law. The statute gives a right to
a lien to any material man who furnishes material
to be used in the construction, alteration, or repair
of a building, (Hill's Code, § 3669,) but in order to
preserve the lien the claimant is required to file
in the proper office, within a certain time after he
has ceased to furnish the material, a claim contain-
ing the name of the person to whom it was fur-
nished, a description of the property to be charged
with the lien sufficient for identification, the name
of the owner or reputed owner, if known, and a
true statement of his demand after deducting all
just credits and offsets: Code, § 3673. The notice
complies with all these requirements, and to hold
that it should contain a further statement that the
materials furnished were actually used in the build-
ing would be imposing a burden upon the lien
claimant not authorized or exacted by law. When
the statement contains all the facts required by
statute, the question as to whether the claimant's
demand will in fact support the lien is a matter of
allegation and proof.

5. The lien notice states that the material and
labor for which the lien is claimed "was furnished
between the twentieth day of October and Decem-
ber seventh, eighteen hundred and ninety-two,"
while the evidence shows that a portion of the
material, amounting in value to twelve dollars and
forty-four cents, was delivered at the building on

October fourteenth, although not charged on the books of the lien claimant until the twenty-eighth of that month. The contention for the appellant is that the claimants are confined in their proof to the dates specified in the lien notice, and however valid a claim they may have against the appellant for material furnished prior thereto, it cannot be included in the lien. But in our opinion the variance is immaterial. The notice does not undertake to set out the items of the claimants' demand, but only the aggregate amount thereof, after deducting all just credits and offsets; and although the proof in support thereof may not be confined strictly to the time specified, it can work no material injury, and can affect no substantial right of appellant: 2 Jones on Liens, § 1407.

6. She also claims to be entitled to a credit for the amount of an overpayment made by her to the claimants on material furnished by them prior to the delivery of the material for which the lien is sought. Concerning this payment, the facts are that the material in question was furnished to one Black, who was the original contractor for a certain portion of the work on the said building, and on October fifteenth, eighteen hundred and ninety-two, there was due from him to Jones and Company five hundred and two dollars and eighty-five cents, less a credit of sixty-seven dollars and fifty cents for materials returned and not used. At the same time Black was entitled to seven hundred and fifty dollars on his contract with appellant. In order to

prevent the possibility of a lien against her building for the materials furnished by Jones and Company to Black, the appellant insisted that not only the amount actually due them from Black should be paid by her from the seven hundred and fifty dollars due him but that she should pay them the entire value of the material furnished, although part had been returned not used, and placed to Black's credit. To satisfy her it was thereupon arranged between Black and Jones and Company that she should pay to the latter the entire amount of the credit side of their bill, and the difference between that sum and the amount actually due from Black should be by them paid over to him, which was done accordingly and the remainder of the seven hundred and fifty dollars paid by her to Black. It is for this overpayment she now claims credit, but it is apparent from all the evidence that she did not pay any more than was actually due Black, and it is immaterial to her what disposition Jones and Company and Black may have made of the money between themselves, so long as no lien is claimed against her building for any of the materials included in such settlement. She was, in effect, paying a debt of Black with his money, and if in so doing she paid more than was actually due, the overpayment belonged to Black, and not to her. It follows that the decree of the court below allowing the lien of Jones and Company is affirmed.

7. The lien of William O. Allen and Brother is for labor performed in moving, raising, lowering,

and placing appellant's building on its foundation, and for the use of their tools and appliances in so doing. In September, eighteen hundred and ninety-two, she employed the lien claimants, who are house-movers, to move said building, which she contemplated altering and repairing, a few feet to the street line, and to raise it about twelve feet so that another story could be put under it. For this work she was to pay them one hundred and ten dollars. After the building had been moved and raised as required, and while it was still supported by the claimants' appliances, she concluded to change her plans, and requested the claimants to allow the building to remain in its then condition until she could perfect a plan of the proposed changes. It was thereupon agreed that the original contract should be abrogated, and that the claimants should be paid a reasonable compensation for their services, and for the use of their tools and appliances while in use as a support to the building. A short· time afterwards, the appellant ordered the building raised an additional twelve feet, and after this was done had it lowered about nine feet. For the work and labor performed in thus moving, raising, and lowering the building, and for the use of their tools and appliances, the claimants filed a notice of lien for nine hundred and forty-three dollars and two cents. An itemized statement of their demand is contained in the notice, from which it appears that two hundred and eight dollars and eighty cents thereof is for work and labor, eighteen dollars for hauling and transporting their tools and appliances

to and from the building, six hundred and two dollars and twenty-two cents for the use of tools and appliances, and the sum of one hundred and thirty-two dollars made up of charges for the services of their foreman and use of tools blended together. It is contended for the appellant that the work and labor performed by the lien claimants was not "in the construction, alteration, or repair" of a building, within the meaning of the statute; and in support of this contention her counsel cites *Trask* v. *Searle*, 121 Mass. 229, and *Stephens* v. *Holmes*, 64 Ill. 336, in which it was held that the removal of a house from one place to another was not within a statute which gives a lien for labor performed in the erection, alteration, or repair of a building. But in the case at bar the services performed by the lien claimants were not in the removal of a building from one place to another, but were in furtherance of a general plan for the alteration and repair of the building, and it seems to us were performed in its "alteration and repair" as much as the work of the carpenter in putting the story under the building after it was raised, or of the brick mason in building the foundation upon which it was to rest. The building could not have been altered and repaired as designed by the owner without the services performed by the lien claimants, which services entered into and became a part of the building as finally completed. If the appellant had contracted with but one person to do all the work necessary in the alteration and repair of her building, it would hardly be claimed that he would

not be entitled to a lien for the work and labor performed by him, although a part thereof may have been employed in moving and raising the building. Why, then, should any other or different rule prevail when the work is performed by different parties under separate contracts, so long as it is all necessary to the contemplated alteration or repair?

8. But we do not think the claimants are entitled to a lien for the use of their tools or appliances, or for hauling or transporting the same to and from the building, for the reason that they are in no sense either materials furnished to be used in the construction, alteration, or repair of a building, or labor performed thereon, and are therefore not within either the letter or spirit of the statute. The mechanics' lien law gives to laborers, material men, and others performing labor upon, or furnishing material, or transporting or hauling material of any kind to be used in the construction, alteration, or repair of, a building or other structure, a special remedy, the scope of which should not be unnecessarily enlarged by a too liberal construction of the act. When, therefore, material is furnished for a particular building, or labor performed thereon, as provided in the statute, the building is lienable; but when, as in this case, the claim is made for the use of certain tools and appliances belonging to the workmen, and used by them merely for the purpose of facilitating the work, they are not, in our opinion, entitled to a lien therefor. Such a claim

is no more within the purview of the statute than
would be one for the use of the tools of a carpenter
or bricklayer furnished by them to facilitate their
work.   If a lien had been claimed for the reasona-
ble value of the services of the claimants in mov-
ing, raising, and lowering the building, the value of
the use of their plant could perhaps have been in-
cluded in and held to be a part of the compensa-
tion for the work and labor performed, but no such
case is presented by this record.   The account
stated in the notice contains various items for days'
work done by different individuals at a certain com-
pensation per day, and in addition thereto a sepa-
rate charge for the use of the tools and appliances,
and we do not think the mechanics' lien law can
be so construed as to support a separate claim of
that character in connection with one for work and
labor.

9.   Nor do we think the claimants entitled to a
lien for the items going to make up the one hun-
dred and thirty-two dollars charged in the account
for the services of their foreman and use of tools,
because they are lumping charges in which are
mingled items for which the law gives no lien.
The rule seems to be that where lienable and non-
lienable items are included in one contract for a
specific sum, or are made ·the basis of a lumping
charge, so that it cannot be perceived from the con-
tract or account what proportion is chargeable to
each, the benefit of the mechanics' lien law is lost.
In such cases the court cannot, by extrinsic evi-

dence, apportion the amount of the entire charge or contract price between the lienable and nonlienable items. But where the claimant's demand, made in good faith, consists of several different items, separately charged, some of which are by law a lien upon the property, and others do not come within the scope of the statute, he may enforce his lien so far as given by law, and it is not vitiated because he has included therein nonlienable items: *Dalles Lumbering Company* v. *Wasco Woolen Manufacturing Company*, 3 Or. 527; *Kezartee* v. *Marks*, 15 Or. 529 (16 Pac. 407); *Williams* v. *Toledo Coal Company*, 25 Or. 426 (36 Pac. 159, 42 Am. St. Rep. 799); *Harrisburg Lumber Company* v. *Washburn*, 29 Or 150 (44 Pac. 390); *Edgar* v. *Salisbury*, 17 Mo. 271; *Nelson* v. *Withrow*, 14 Mo. App. 270; *Johnson* v. *Building Company*, 23 Mo. App. 546; *Schulenberg Lumber Company* v. *Strimple*, 33 Mo. App. 154. In the present case the one hundred and thirty-two dollars referred to consists of charges for service of foreman and use of tools eleven days at twelve dollars per day. How much of this is for service of foreman and how much for use of tools does not appear, and the court is not authorized to make the apportionment from oral evidence: 2 Jones on Liens, § 1323. It follows that Allen and Brother are entitled to a lien for two hundred and eight dollars and eighty cents for labor and services performed by them, but not for the use of their tools and appliances, nor for the charge made for the services of foreman and use of tools, and in this respect the

decree of the court below must be modified, but in all other respects it is affirmed.          MODIFIED.

## ON MOTION TO RECALL MANDATE.

10. The mandate having been issued directing the sale of Mrs. Elwert's property for the amount of the lienable items, and also directing the entry of a personal judgment against her for the value of the nonlienable items, there was filed the following motion to recall mandate:

*To the Honorable Judges of the Supreme Court of the State of Oregon:* Now comes the defendant and appellant, Mrs. J. B. Elwert, by her attorneys of record, Watson, Beekman and Watson, and respectfully moves and petitions this honorable court for an order recalling the mandate heretofore issued in the above entitled suit, and directing the same to be modified so as to provide for the entry of a decree in favor of Andrew Allen, surviving partner of the late firm of William O. Allen and Brother, against the defendant and appellant, Mrs. J. B. Elwert, for the amount held to be a lien upon the property therein described, namely, three hundred and seven dollars and forty cents, and not for one thousand and twenty dollars and sixty cents, which is the combined total of the lienable amount and the balance of the claim held not lienable by the opinion of the court herein.

This motion and petition is based upon the following grounds, namely, (1) the mandate as issued is not in conformity or accordance with the opinion

delivered and filed in this suit, which simply held that William O. Allen and Brother are entitled to a lien upon the property described to the amount of two hundred and eight dollars and eighty cents; (2) this court has no jurisdiction, the suit being to foreclose a mechanics' lien, to enter a decree for any sum in excess of that found to be a lien upon the property described; (3) the claim upon which the suit is based is a *quantum meruit*, and by directing a personal decree against the appellant, Mrs. J. B. Elwert, for a sum in excess of that held to be a lien upon the property described, this court deprives appellant of her constitutional right of trial by jury; (4) under the decision of this honorable court in the case of *Ming Yue* v. *Coos Bay Railroad Company*, 24 Or. 392, the mandate as issued is unauthorized and in violation of appellant's constitutional rights. The jurisdiction in law and equity is distinct and independent. The cause of suit herein was a mechanics' lien. Beyond the amount of the lien, equity has no jurisdiction to enforce an unlienable claim against appellant. The remedy at law is ample and adequate, and the appellant is entitled to the constitutional right of trial by jury; (5) the opinion filed herein makes no provision for an entry of a decree against appellant for any sum in excess of that held to be a lien upon the property described. No notice has ever been given to appellant or her attorneys that a personal decree for any sum in excess of the amount of the lien would be asked for, and appellant had no knowledge that such decree had been directed in the mandate is-

sued herein until after the same was entered and filed in the court below.

In support of the motion there was filed the following brief by *Mr. Benjamin B. Beekman,* viz:

This court has held that Andrew Allen is entitled to a lien upon certain property of the appellant to the extent of two hundred and eight dollars and eighty cents. The claim as set out in the notice of lien amounted to nine hundred and forty-three dollars and two cents. The amount of the lien allowed by the lower court was eight hundred and fifty-three dollars. The mandate issued in this suit, after declaring a lien of two hundred and eight dollars and eighty cents upon said property and directing a sale thereof, further decrees a personal judgment against the appellant to the amount of one thousand and twenty dollars and sixty cents, this sum being made up of the eight hundred and fifty-three dollars and costs taxed. This court, in its decision herein, held that of the eight hundred and fifty-three dollars respondent Allen was entitled to a lien to the extent of only two hundred and eight dollars and eighty cents.

The contention of appellant is that this is a proceeding or suit to foreclose a mechanics' lien, and that this court has no jurisdiction to enter a decree therein for any greater sum than that found to be a lien upon the premises sought to be charged. It is submitted that the limit of the court's jurisdiction is to determine the amount of the lien, and direct a sale of the property and distribution of the proceeds

thereof. To do more than this would be to deprive appellant of her constitutional right of trial by jury as to any additional claim founded upon an implied promise to pay the reasonable value of materials alleged to have been furnished and labor to have been performed. The opinion rendered herein simply holds that respondent Allen is entitled to a lien to the extent of two hundred and eight dollars and eighty cents. There is no discussion of the liability of appellant for any other or greater sum. It would seem that the court merely contemplated a decree for that amount, and did not intend that any personal judgment should be entered against the appellant, at any rate for any sum in excess of the amount of the lien decree. This additional amount is based upon an implied promise. It can not be said that appellant would gain nothing by trial by jury as to this excess of lien claim. This right is guaranteed by the constitution and appellant should not be deprived thereof unless the cause is clearly within the jurisdiction of and cognizable by a court of equity.

In *Ming Yue* v. *Coos Bay Railroad Company*, 24 Or. 392, this court defined the distinction between suits in equity and actions at law, and held that a complaint for the foreclosure of a mechanics' lien which did not state a cause of suit could not be retained and treated as an action to recover money. In that case there was no cause of suit at all — and hence equity acquired no jurisdiction whatever. In this case, it will doubtless be contended that equitable jurisdiction attached, and that

therefore, having acquired jurisdiction, equity will retain it for all purposes. Appellant contends, however, that equity's jurisdiction in a mechanics' lien suit is governed by the statutes creating and providing for the enforcement of the lien — in other words, that equity has no jurisdiction except to foreclose the lien. Our statute does not contemplate a personal decree — the statute is intended to operate and apply to certain property which may and is to be sold on execution to satisfy a given lien. It is true the decree may operate as a personal decree as to any deficiency which may remain after there has been a sale of the property subject to the lien, and it fails to satisfy the amount due on the lien: Phillips on Mechanics' Liens (3d ed.), § 447; *Hildebrandt* v. *Savage*, 4 Wash. St. 524; *Green* v. *Sprague*, 120 Ill. 419. In some states a personal decree is allowed for the amount of the lien even where the lien itself fails, but *Ming Yue* v. *Coos Bay Railroad Company*, 24 Or. 392, holds to the contrary and is conclusive on that point.

In the Ming Yue case the lien did not exist — it was wholly invalid. In this case it does not exist — it is invalid as to any amount in excess of two hundred and eight dollars and eighty cents. All items of the claim above the two hundred and eight dollars and eighty cents have been declared by the court to be nonlienable. The jurisdiction in each case is to foreclose the lien. In the former it has nothing to operate upon; in the latter it ceases when the lien has been declared and foreclosed. As to any sum in excess of the actual lien there is

nothing for the equitable jurisdiction to operate
upon. In other words, the jurisdiction of the court
is bounded and limited by the foreclosure of the
lien: Phillips on Mechanics' Liens (3d ed.), § 447.
The statute is to determine the manner in which
the judgment is to operate, and there can be no
authority to enter a personal decree against the
owner unless the statute expressly so provides. Our
statute (Hill's Code, §§ 3669, 3670,) provides for a
lien upon the structure and the land upon which it
is situated, to the extent of the owner's interest—
but does not provide for any personal decree. In
section 3677, Hill's Code, it is provided that each
claimant may have execution for any balance due
him after distribution made as directed therein. The
statute does not provide even for a personal decree
to the amount of the lien — it merely causes the
decree to operate as a personal decree as to any
deficiency after distribution of the proceeds of the
sale of the property. The statute cannot surely be
said to authorize a personal decree for a claim —
nonlienable — over and above the amount of the
lien. The object of the statute is simply to subject
the property to the lien, and a foreclosure suit gives
no jurisdiction except to foreclose the lien and sub-
ject the property to its satisfaction.

Section 3677 also provides that "the proceedings
upon the foreclosure of the liens created by this act
shall be, as nearly as possible, made to conform to
the proceedings of a foreclosure of a mortgage lien
upon real property." Now, as section 414 of Hill's
Code provides that if a promissory note or other

personal obligation for the payment of the debt ha
been given by the mortgagor a recovery of the
amount may also be decreed *in personam*, it may
be argued that a personal decree is therefore author-
ized.  Section 3677 merely provides that the forms
of foreclosure of a realty mortgage shall be followed
as nearly as possible, it does not extend or apply
the provisions of section 414 to mechanics' liens.
Besides, the personal decree provided for by section
414 is limited exclusively to those cases where a
promissory note or other personal obligation has
been given for the payment of the debt.  It does
not embrace a mere implied promise to pay: *Van
Ogden* v. *Durham*, 35 Cal. 141.  The personal de-
cree for the amount of the note in a realty fore-
closure is purely statutory and is not otherwise
authorized.  No such statutory provision exists as to
mechanics' liens.  If it be contended that section
414 covers a mechanics' lien of and by itself, the
personal decree is still unauthorized, for there is in
this case no note or other personal obligation for
the payment of the debt.  The claim is simply in
the nature of assumpsit.  It is therefore respectfully
submitted that, as the nature and character of the
decree in the suit of foreclosure of a mechanics'
lien is to be determined solely by the statutes cre-
ating and providing for the enforcement of the lien,
and as our statutes make no provision for a per-
sonal decree, (not even for the amount of the lien
itself,) the motion to recall and revise the mandate
as petitioned for should be granted, and such cor-
rection and revision be made.

*Contra* there was filed the following brief by *Mr. George H. Durham:*

The appellant has filed a motion herein to recall the mandate of this court which had been entered of record in the Circuit Court of the State of Oregon for Multnomah County, in the above entitled suit, upon the ground that the supreme court had no jurisdiction to render a judgment or decree in favor of Allen for such portions of his account involved in said suit as this court determined were not lienable. Allen's claim covered a number of different items, growing out of and composing one transaction. The court below found substantially for the amount claimed by Allen, but this court determined that he was entitled to a lien to the extent of two hundred and eight dollars and eighty cents, and gave him a judgment for the remainder of his claim as found by the court below. The burden of counsel's contention seems to be that a mechanics' lien is purely the creature of statute, and that an equity court in enforcing it derives its jurisdiction also from the statute, and that therefore it can do no more than declare the amount of lien and direct the sale of the property in satisfaction thereof. It is admitted that the lien of a mechanic or material man in this state is dependent upon the statute, but we submit that the vice of appellant's argument lies in the assumption that the jurisdiction of an equity court to enforce or foreclose such lien is also purely statutory. We contend that such jurisdiction is inherent in the court as a court of equity, and is not

at all based upon the statute which creates the lien; and if we are correct in this proposition, then it follows that there is nothing in the case to take it out of the ordinary rule governing the procedure and jurisdiction of equity courts.

Counsel quotes to some extent from section 3677 of Hill's Code. This section declares that suits to enforce liens created by this act shall be brought in the circuit courts, and that the pleadings and other proceedings shall be the same as in other cases. We submit that this clause confers no new jurisdiction or power upon the circuit courts, but is merely declaratory, in so far as it directs that such suits shall be brought in the circuit courts, of the law as it already existed independent of the statute. It does, however, provide that the practice and "other proceedings" shall be the same as in other cases, evidently meaning "as in other equity cases." The same section proceeds to say "that in all suits to enforce any lien created by this act, all persons personally liable and all lienholders whose claims have been filed for record, etc., and all other persons interested in the matter in controversy or in the property sought to be charged with the lien, may be made parties." It further provides that the proceedings upon the foreclosure of the liens created by this act, shall conform as nearly as possible to the proceedings of the foreclosure of a mortgage lien upon real property. It seems to us that this provision of the statute authorizing all persons personally liable to be made parties must be considered to mean something, must have some pur-

pose, and we take it that that purpose is found in the fact, and that it is perfectly competent for a court of equity, having obtained jurisdiction of the subject matter of a suit for any purpose, to proceed to a final determination and determine all questions involved in the case. If it had been intended by the legislature to limit the jurisdiction of the circuit court, it would not have been necessary to have permitted or required any parties to the suit, other than the lien claimants, the contractor, and the owners of the property upon which it was sought to fasten the lien; but the statute goes beyond that, and in express terms permits all persons personally liable to be brought in, and unless it is to be assumed that the legislature intended to do a vain and nugatory thing, it must be assumed that the reason for bringing in all persons who are in anywise personally liable was that there might be a full and complete determination of all matters involved in the transaction out of which the lien arose.

We also contend that the provisions of section 414, Hill's Code, should be read in connection with section 3677, above cited. Counsel for appellant assumes in his argument that any personal obligation contemplated by section 414 is necessarily in the nature of a promissory note or obligation, evidenced by writing, but we submit that this construction is too narrow, and is not borne out by the fair interpretation of the words especially taken in connection with the last paragraph of section 3677, with which section 414 should be

read.  It seems to us that the only question which
is fairly under consideration here, is whether it is
competent for an equity court, having jurisdiction of
the subject matter of the suit, and of the parties, to
proceed to a full determination of all the questions
involved in the controversy, and this independent
of any statute.  It is a familiar doctrine of equity
that where a chancery court has jurisdiction of a
case for one purpose, which purpose is clearly
established to be within the equity jurisdiction, it
will generally retain the case until all matters in-
volved are disposed of.  This is also held in the
case of *Phipps* v. *Kelly,* 12 Or. 221.  In the case
of *Lynch* v. *Metropolitan Elevated Railway Company,*
129 N. Y. 274, (26 Am. St. Rep. 523, and note,)
it is held that where a court of equity has juris-
diction for one purpose, it may retain it until the
entire controversy is settled.  The doctrine of this
case has been followed in *Hayne* v. *Whitsett,* 18
Or. 454.  Now in this case the plaintiff presented
in his complaint a case of equitable cognizance;
the defendant Allen, also a lien claimant, set forth
his cause of suit.  The court unquestionably had
jurisdiction of the subject matter of this suit and
of the parties.  This court in its decree complained
of by appellant found that a number of items
composing the claim of Allen were not the sub-
jects of a lien under the statute, and gave him a
lien for only two hundred and eight dollars and
eighty cents, but did find, as the court below had
found, that he had rendered other services for
which this court said he was not entitled to a

lien, amounting to several hundred dollars in addition, and gave him a judgment therefor. The testimony had all been taken, the parties had had their day in court, and it is a familiar proposition that equity abhors a multiplicity of suits.

In the case of *Russell* v. *Clark's Executors* 11 U. S. (7 Cranch), 69, the United States Supreme Court announced the following universal rule: "That if certain facts essential to the merits of a claim purely legal be exclusively within the knowledge of the party against whom the claim is asserted, he may be required in a court of chancery to disclose those facts, and the court being thus rightfully in possession of the case, will proceed to determine the whole matter in controversy.' The rule has been asserted by many American courts in very general terms that whenever a court of equity has obtained jurisdiction of the case for any one purpose, it may retain such cause for the purpose of adjudicating upon all the matters involved and of granting complete relief. Pomeroy in his work on Equity Jurisprudence, says: "This power which the equity courts possess, of deciding the whole matter in one judicial proceeding, and of thus avoiding a repetition or circuity of legal actions, is a fruitful source of the current equitable jurisdiction." The same author in the close of section 138, suggests that the statutes of many of the states have enlarged the original and inherent jurisdiction of equity courts rather than limit them, and as examples, among others, he mentions the ordinary equitable suit to enforce mechanics' liens. From a general review of

29 OR.— 31.

the equity authorities, as well as a fair interpretation of our statutes, we submit that the court had an undoubted right to determine the controversy in this case, by declaring the amount of respondent Allen's lien in the first instance and thereafter giving him judgment for the amount otherwise due him, against the party personally liable.

Decided, July 6, 1896.

PER CURIAM. After considering the carefully prepared briefs presented for and against the present motion, we are agreed that the motion should be granted. The principles enunciated in *Ming Yue v. Coos Bay Railroad Company*, 24 Or. 392, are decisive of this question.     MANDATE RECALLED.

Decided at PENDLETON, July 18, 1896.