Decided 27 February, 1899.

## TITLE GUARANTEE COMPANY v. WRENN.

[56 Pac. 271.]

1. MECHANIC'S LIEN—POSTING NOTICE—CONSTITUTIONALITY.—Section 3672, Hill's Ann. Laws, providing that where buildings or improvements are constructed on land with the owner's knowledge, the interest of the owner shall be subject to the lien, unless within three days after notice of the construction he gives notice in writing, posted on the land, that he will not be responsible for the improvement, is not unconstitutional on the ground that it permits a lien to attach without the consent of the owner, since it prescribes only what shall be evidence of the owner's consent.

2. MECHANIC'S LIEN—"OWNER."—The owner of land upon which a building is erected by another cannot avoid the effect of his failure to give the statutory notice, provided for by Section 3672, Hill's Ann. Laws, on the ground that the "owner" referred to in the statute is the owner of the building, and not the owner of the land.

3. FILING ANSWER IS COMMENCING SUIT IN LIEN CASES.—The filing of an answer by the holder of a mechanic's lien in a suit to foreclose another lien is as effectual to save the lien from the bar of the statute of limitations as the beginning of a separate suit to foreclose.

4. PLEADING OWNERSHIP—AIDER BY DECREE.—An answer in a suit to foreclose a mechanic's lien which sets up the ownership of a further lien, but does not definitely state who owned the property, will be sufficient after decree, where the lien notice, which is made part of the answer, contains full allegations on that subject.

5. LIENS—CONSTITUTIONALITY OF ATTORNEY'S FEE.—Section 3677, Hill's Ann. Laws, providing that in suits to enforce mechanics' liens the court, on entering judgment for plaintiff, may allow a reasonable attorney's fee, is not unconstitutional on the ground that it denies defendant the equal protection of the law by discriminating between plaintiff and defendant.

6. EFFECT OF INCLUDING NONLIENABLE ITEM IN NOTICE.—A mechanic's lien is not rendered invalid by the fact that the filed claim contains a nonlienable item, if such item can be separated from the lienable items by testimony.

7. PURCHASE OF LIEN BY LAND OWNER.—MERGER.—Merger is largely a question of intention, and where there is a reason for keeping alive the adverse interest, merger does not take place, unless the owner expressly so wishes: *Watson v. Dundee Mortgage Co.*, 12 Or. 483, applied.

8. AMOUNT OF RECOVERY ON PURCHASED LIEN.—A purchaser of a mechanic's lien is not, as against other lien holders toward whom he does not sustain any fiduciary relations, limited to a recovery of only what he paid for it. The lien is enforceable under such circumstances to its full face.

9. PRIORITY OF RENEWAL MORTGAGE OVER INTERVENING LIEN.—A renewal note and mortgage given in good faith before the filing of intervening mechanics' liens against the property, and without knowledge of such liens, or of the right to such liens, occupy the same place, so far as priority over the liens are concerned, as the original note and mortgage: *Capital Lumbering Co. v. Ryan*, 34 Or. 73, followed.

(Headnotes by BEAN, J.)

From Multnomah :    HENRY E. McGINN, Judge.

This suit was originally brought by Inman, Poulsen & Co. to foreclose a lien for material furnished by them, and used in the construction of certain buildings on lots 7 and 8 in block 135, Caruthers' Addition to the City of Portland.    Other claimants, who were made parties defendant, filed answers, setting up their alleged liens, and thereafter, and pending the final determination of the suit, the liens of the original plaintiffs and of all the defendants except the respondents Jackson and others were assigned and transferred to the present plaintiff, the Title Guarantee & Trust Company, and the suit thereafter proceeded in its name.    The facts are that on October 23, 1894, Emil Pohl, Anna Pohl, his mother, and Anna Jordan, his sister, were the owners of the property referred to, subject to a mortgage in favor of Mary E. Rust upon the undivided half thereof to secure the payment of $1,260.    On the day named, Emil Pohl, who was the agent of his mother and sister, executed and delivered to one Schuck a bond for a deed of the property in question, conditioned that he would make and deliver to Schuck or his assigns a good and sufficient conveyance therefor on or before the twenty-third of January, 1894, provided Schuck would, on or before that day, pay or cause to be paid to him the sum of $3,000. On the same day Schuck assigned and transferred said bond to the defendant Ralph E. Wrenn, who immediately entered into possession of the property, and began the construction of four dwelling houses thereon, purchasing the material from the several lien claimants who are parties to this suit, and on the twenty-second of December conveyed the east thirty-three and one-third feet to the present plaintiff as security for the sum of $350. On the twenty-ninth of March, 1895, Inman, Poulsen &

Co. commenced this suit to foreclose their lien upon the buildings in question, making Emil Pohl, Anna Pohl, Anna Jordan, Ralph E. Wrenn, the Title Guarantee & Trust Company, and the several lien claimants parties. As already indicated, the defendant lien claimants filed answers setting up their respective liens, but no process was issued thereon, nor did they make service thereof on the owners of the property within six months after the filing of their respective liens. While the suit was pending, Wrenn, having failed to comply with the terms of his bond, assigned and transferred the same to Emil Pohl, who, in August and September, 1895, acquired the interest of his mother and sister, and on September 14, 1895, sold and conveyed the entire property to A. S. Pattullo in consideration of the payment by him of $500 each to Anna Jordan and Anna Pohl, $500 on a mortgage in favor of one Clayson, and the assumption of the Rust mortgage, which had been renewed a few days before the filing of any of the claims of mechanics' liens.

On September 18, 1895, Pattullo, through the Title Guarantee & Trust Company, which had acted as his agent in the entire transaction, borrowed of the Portland Trust Company $5,100 on the property, and, in view of the pending suit and the unsatisfied liens on the property, the guarantee company issued to the trust company its title policy, and received the money so borrowed by Pattullo, from which it paid $500 to Anna Pohl, the like sum to Anna Jordan, the Clayson mortgage, and placed the balance thereof in its vaults, to the credit of Pattullo, and subject to his check. The guarantee company, in order to protect itself from liability on its title policy, purchased and had assigned to it, between the eighteenth and twenty-fifth of September, 1895, the Rust mortgage, and all the alleged mechanics' liens involved in the suit then pending, except those claimed by the respondents

Jackson, Kern, Smith Bros., Gates, and Findlay ; and it was subsequently, by order of the court, substituted for such parties. On September 30, 1895, Pattullo, upon being substituted as a party defendant in place of the former owners of the property to whose interest he had succeeded by deed, filed a motion to strike out the answers of the respondents Jackson and others on the ground that six months had expired since their liens had been filed, and no suit had been brought to enforce the same. This motion being overruled, he interposed a demurrer to the answers for the same reason, which was likewise overruled, whereupon he answered the complaint and cross bills, putting in issue the validity of all the liens. The respondents Jackson and others subsequently filed amended answers, setting up their liens, and alleging, in effect, that in making the pretended purchase of the Rust mortgage and the several mechanics' liens, the Title Guarantee & Trust Company was in fact acting as the agent and representative of Pattullo, the owner of the property, and that such transfer was in fact a payment and satisfaction of such liens, and not a purchase. After moving against and demurring to these amended answers, Pattullo, protesting that the court was without jurisdiction, and that the respective liens were barred, answered, denying the material allegations of these amended answers or cross bills, and alleged that the buildings were constructed without the authority or knowledge of his predecessors in interest. Thereafter the Title Guarantee & Trust Company also answered the amended cross bills of the respondents Jackson and others, denying the material allegations thereof, and alleging that the purchase of the Rust mortgage and the several mechanics' liens was made by plaintiff with its own money, in its own behalf, and not for or on behalf

35 OR.—5.

of Pattullo, and that it took the same with the express purpose and intention that such liens should be foreclosed in the suit then pending. Upon the issues made by these pleadings the cause was tried, and as against Pattullo the liens claimed and owned by the Title Guarantee Company were sustained, but as between the title company and the respondents Jackson and others it was held that the Rust mortgage and the several mechanics' liens which had been assigned to the guaranty company were satisfied and extinguished, and that those of Jackson and others were first liens upon the property, and entered a decree accordingly. The Title Guarantee & Trust Company and the defendant Pattullo both appeal.

Modified.

For the Title Guarantee Company there were briefs over the name of *Davis, Gantenbein & Veazie*, with an oral argument by *Mr. Arthur L. Veazie.*

For A. S. Pattullo there were briefs over the name of *Snow & McCamant*, with an oral argument by *Mr. Wallace McCamant.*

For Jackson and others, lien claimants, there were briefs and an oral argument by *Messrs. George G. Gammans* and *Robert C. Wright.*

Mr. Justice Bean, after stating the facts in the foregoing language, delivered the opinion.

1. The defendant Pattullo challenges the validity of all the mechanics' liens involved in this suit on the grounds: (1) That section 3672 of the code, under which it is sought to sustain such liens as against him, is unconstitutional and void; (2) that this section, when properly construed, is intended as a provision by which

property owners otherwise liable to pay mechanics' liens might relieve themselves from such liability, and, therefore, has no application to a case of this character; and (3) that the evidence fails to show that the buildings in question were constructed with the knowledge of the owners of the property. The section referred to provides that "every building, or other improvement mentioned in section 3669, constructed upon any lands with the knowledge of the owner  *  *  *  shall be held to have been constructed at the instance of such owner," and that his interest shall be subject to any lien filed in accordance with the provisions of the act, unless he "shall, within three days after he shall have obtained knowledge of the construction,  *  *  *  give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situated thereon." It is claimed that, inasmuch as a lien can only be created upon the land of another by his consent or authority, this section is unconstitutional and void, and the cases of *Randolph* v. *Builder's Supply Co.* (17 South. 721), and *Meyer* v. *Berlandi*, 39 Minn. 438 (40 N. W. 513), are cited in support of this contention; but neither of these cases is in point, because by the statutes which were there held void the fact that the person performing labor or furnishing material was not enjoined by the owner, or notified in writing not to do so, is made conclusive evidence that such labor was performed or material furnished with or by his consent, without reference to his knowledge thereof; while our statute, assuming that a lien cannot be created without the consent of the owner, express or implied, simply provides a rule of evidence by which such consent can be determined. Similar provisions of mechanic's lien laws have been sustained and en-

forced even in the state to whose reports we are referred for counsel's leading authority. See *Wheaton* v. *Berg*, 50 Minn. 525 (52 N. W. 926); *West Coast Lumber Co.* v. *Newkirk*, 80 Cal. 275 (22 Pac. 231); *Harlan* v. *Stufflebeem*, 87 Cal. 508 (25 Pac. 686); *Allen* v. *Rowe*, 19 Or. 188 (23 Pac. 901). So that we conclude this section is not open to the constitutional objection urged.

2.  Nor do we concur with counsel in the contention that the owner referred to therein is the person who caused the building to be constructed, and not the owner of the legal title. This question was considered and decided against such contention by the Supreme Court of California in the case of *West Coast Lumber Co.* v. *Newkirk*, 80 Cal. 275 (22 Pac. 231), and, we think, rightly so.

It is next claimed that there is no evidence showing that the buildings in question were constructed with the knowledge of Pattullo's predecessors in interest. It is unnecessary for us to refer at length to the testimony upon this question. Let it suffice to say that, in our opinion, it is amply sufficient to sustain the finding of the court below in that regard. Indeed, it seems quite clear that Emil Pohl had full knowledge of the construction of these buildings, and we think his agency for his mother and sister was of such a character as to bind them by such knowledge, especially since they afterwards ratified his acts by executing a deed to enable him to fulfill the conditions of his bond, and their subsequent conveyance of the property to him, in order that he might transfer it to Pattullo.

3.  Next it is claimed that certain of the liens sought to be foreclosed in this suit are barred by the statute of limitations, because the answers of the defendants were not served upon the owners of the property. The statute provides (section 3675) that "no lien provided for in this act shall bind any building  *  *  *  for a longer

period than six months after the same shall have been
filed unless suit be brought within that time to enforce
the same.'' But section 3677, a part of the same act,
provides that in a suit to foreclose a mechanic's lien all
other lienholders whose claims have been filed shall be
made parties, and under this section we take it that a
suit to enforce a particular mechanic's lien is,. in effect,
a proceeding to enforce the liens of all lien claimants,
parties to the record, and the filing of an answer by a
defendant in such proceeding is as much a compliance
with the statute as the beginning of the original suit:
*Mars v. McKay*, 14 Cal. 127, and Phillips, Mech. Liens,
§ 333.

4.   It is also claimed that the answers of the respond-
ents Jackson and others are insufficient to support the
decree because the name of the owner or reputed owner
of the property at the time the buildings were being
constructed is not stated therein.   The allegations of the
pleadings do not seem very clear upon this question, but
we deem them sufficient after decree.   The lien notices,
which are attached to and made a part of each of the
pleadings, name every person who seems to have had or
claimed any interest whatever in the property, or who
was an owner or reputed owner; and the allegations of
the pleadings setting out these notices are quite full and
complete.   There is an evident attempt to set out in the
answers the names of the owners of the property, and
we are not prepared to hold the answers fatally defective
on that ground.

The court below, in sustaining the liens of the re-
spondents Jackson and others, allowed $250 for attorney's
fees in foreclosing the same, and $350 to the attorneys
for the Title Guarantee & Trust Company for services in
foreclosing its liens.   It is claimed by Pattullo that these
amounts are grossly excessive, but the findings of the

court are amply sustained by the testimony, and we are not disposed to disturb its conclusions.

5. Patullo also insists that the court erred in allowing any attorney's fee. The statute provides (section 3677) that "in all suits under this act the court shall, upon entering judgment for the plaintiff, allow as a part of the costs all moneys paid for the filing and recording of the lien, and also a reasonable amount as attorney's fees;" and it is contended that this provision of the statute is unconstitutional and void, because it grants to one litigant a privilege not granted to the other, and therefore denies the owner in a suit of this character equal protection of the laws. There are many cases holding that the legislature cannot make unjust distinctions between suitors without violating the spirit or letter of the constitution. But it will be observed that the attorney's fees provided for in the mechanic's lien act are not fixed and determined by the act, nor imposed strictly as a penalty, but rather in the nature of costs, of which the amount is to be determined by the court; and it is therefore, in our opinion, not obnoxious to the constitution : See *Griffith* v. *Maxwell*, 19 Wash. 614 (55 Pac. 571) ; *Wortman* v. *Kleinschmidt*, 12 Mont. 316, 330 (30 Pac. 280) ; *Jewell* v. *McKay*, 82 Cal. 144, 152 (23 Pac. 139); *Helena Supply Co.* v. *Wells*, 16 Mont. 65, 69 (40 Pac. 78).

It is next claimed that the Jackson lien is invalid because the materials were not furnished for the four buildings indiscriminately under an entire contract, but under an agreement to furnish certain specified material for each building, and for a price fixed and agreed upon. But this contention is not sustained by the testimony. Jackson himself is the only witness who seems to have testified upon the subject, and his evidence is to the effect that the materials were furnished under one entire con-

tract for all four buildings indiscriminately. The manner in which he arrived at the contract price is immaterial.

6. It is next claimed that the Inman, Poulsen & Co. lien is invalid, because among the items going to make up the amount thereof is a small item for material furnished and used in the construction of a fence around the property upon which the building sought to be affected by the lien is situated. Upon this question the evidence shows that the material was furnished from time to time, as ordered by the persons in charge of the construction of the buildings, at the ordinary and customary price for each separate article ; and under these circumstances the fact that the claim filed included by mistake an item not lienable does not invalidate the lien. This question has been considered in *Harrisburg Lumber Co.* v. *Washburn*, 29 Or. 150 (44 Pac. 390) ; *Getty* v. *Ames*, 30 Or. 573 (60 Am. St. Rep. 835, 48 Pac. 355) ; and *Allen* v. *Elwert*, 29 Or. 428 (44 Pac. 823, and 48 Pac. 54); and the rule announced in the last case cited is that "Where lienable and nonlienable items are included in one contract for a specific sum, or are made the basis of a lumping charge, so that it cannot be perceived from the contract or account what proportion is chargeable to each, the benefit of the mechanic's lien law is lost. In such cases the court cannot, by extrinsic evidence, apportion the amount of the entire charge or contract price between the lienable and nonlienable items. But where the claimant's demand, made in good faith, consists of several different items, separately charged, some of which are by law a lien upon the property, and others do not come within the scope of the statute, he may enforce his lien so far as given by law, and it is not vitiated because he has included therein nonlienable items." Within this rule it is ap-

parent that the lien of Inman, Poulsen & Co. is not vitiated because by mistake they included therein certain material for which they were not entitled to a lien. At the time the claim of lien was verified the claimants honestly believed that all the material furnished by them had actually been used in the construction of the buildings. It turns out by the evidence, however, that without any negligence or willfulness on their part they had made a mistake, and included $15.40 worth of material which they did not intend to include, and for which they were not entitled to a lien. There is a clear distinction to be made between such a state of facts and a case where the notice of the lien included in one lump charge lienable and nonlienable materials.

7. This brings us to the question in controversy between the Title Guarantee & Trust Company and the respondents Jackson and others. On behalf of the latter it is contended that all the mechanics' liens acquired by the guarantee company, as well as the Rust mortgage, were purchased by it as the agent and representative of Pattullo, and with his money, and consequently were merged in the legal title, and extinguished as against these respondents. But we do not think this contention is sustained by the record. The manager of the guarantee company and Pattullo both testified that the liens were purchased by the company with its own money, on its own behalf, and not as the agent of Pattullo. But, however this may be, it is indisputable that it was the intention of the parties to preserve all these liens intact as against the respondents, and to proceed with the suit then pending for their foreclosure ; and under these circumstances a court of equity will not suffer them to merge into the legal title, and be extinguished. Merger, in equity, takes place when the owner of the fee becomes entitled in his own right to a charge or incumbrance on

the land, and no intention to prevent it has been expressed, and none is implied from the circumstances and interests of the party : 2 Pomeroy, Eq. Jur. § 790. And where the legal ownership of the land and absolute ownership of the incumbrance become vested in the same person, the intention, as a general rule, governs the question of merger. Pomeroy says : "The question is upon the intention, actual or presumed, of the person in whom the interests are united. Sir George JESSEL says : 'In a court of equity it has always been held that the mere fact of a charge having been paid off does not decide the question whether it is extinguished. * * * If there is no reason for keeping it alive, then equity will, in the absence of any declaration of his intention, destroy it; but, if there is any reason for keeping it alive—such as the existence of another incumbrance—equity will not destroy it.' In short, where the legal ownership of the land and the absolute ownership of the incumbrance become vested in the same person, the intention governs the merger in equity. If this intention has been expressed, it controls. In the absence of such an expression, the intention will be presumed from what appear to be the best interests of the party, as shown by all the circumstances. If his interests require the incumbrance to be kept alive, his intention to do so will be inferred and followed. If, on the contrary, his best interests are not opposed to a merger, then a merger will take place, according to his supposed intention :" Id. § 791. And, as said in *Watson* v. *Dundee Mortgage Co.*, 12 Or. 483 (8 Pac. 552): "In equity, mergers are considered odious, and are much less favored than at law, and are made to depend upon the intention and interest of the party. It is only in those cases where it is perfectly indifferent to the party in whom the interests had united whether the charge or term should or should not subsist that in

equity the term is merged. But if the owner has an interest in keeping them distinct, or there is an intervening right, there will be no merger." Within this rule it is clear that the mechanics' liens sold and assigned to the Title Guarantee & Trust Company did not merge in the legal title, even if it was acting as the agent of Pattullo, because there was an evident intention to keep them alive; and for the further reason that a merger would be against the interests of Pattullo, and therefore inequitable and unjust.

8.   It appears from the testimony that the guarantee company purchased the mechanics' liens now claimed by it for very much less than their face, and it is insisted by the respondents Jackson and others that in some way they ought to be entitled to the benefit of such discount; or, in other words, that the company ought not to be permitted to enforce the liens for any other or greater amount than the cost thereof. But upon what ground this contention is to be sustained we are at a loss to understand. There was certainly no fiduciary relation between the company and Jackson and others which would entitle the latter to the benefit of any discount which the company may have received in the purchase of these liens, and, so far as they are concerned, it is a matter of no consequence whether the liens are enforced in the name of the Title Guarantee & Trust Company or in the name of the original parties. The result would be the same. In either event, they will simply share *pro rata* with the other lien claimants in the common fund.

9.   Nor is there any merit in the contention that the several mechanics' liens take precedence over the Rust mortgage on account of the renewal thereof. It appears from the testimony that before any of the liens in question had been filed the note and mortgage were renewed

in ignorance of any intervening liens or right to a lien, and within the doctrine of *Pearce* v. *Buell*, 22 Or. 29 (29 Pac. 78), *Kern* v. *Hotaling*, 27 Or. 205 (40 Pac. 168), and *Capital Lumbering Co.* v. *Ryan*, 34 Or. 73 (54 Pac. 1093), the new mortgage will occupy the same place, so far as the priorities are concerned, as the one it superseded. This, we believe, disposes of all the questions presented by this complicated record; and results in a modification of the decree of the court below, and a decree will be entered here in accordance with this opinion.

MODIFIED.