## CASCADEN v. WIMBISH.

### (Circuit Court of Appeals, Ninth Circuit. April 7, 1908.)

### No. 1,502.

1. **MINES AND MINERALS—MECHANICS' LIENS—ALASKA CODE—WORK DONE FOR LESSEE OF MINING CLAIM.**

   Civ. Code Alaska, §§ 262, 263, and 265, provide, inter alia, for a laborer's lien for work done on a mine at the instance of the owner or his agent; that any person having charge of the work shall de deemed his agent; that in case the work is done for a lessee without the lessor's knowledge, the lien shall extend only to the leasehold interest, but the owner's interest shall be subject to a lien for any work done thereon with his knowledge, unless he shall give notice that he will not be responsible within three days after he obtains such knowledge. *Held*, that the lien given by such sections, construed together, extends to and binds the interest of the owner of a mining claim for improvements made thereon under direction of a lessee with the owner's knowledge and in the absence of any disclaimer of responsibility by him.

2. **SAME—SUIT TO FORECLOSE LIEN—PARTIES.**

   In a suit against the owner of a mining claim to establish a laborer's lien thereon for work done at the instance of lessees, such lessees are not necessary parties, and it was within the discretion of the court to refuse to permit the filing of an amended answer setting up their nonjoinder as a defense, after the case was ready for trial, and after such lessees had left the jurisdiction of the court.

3. **MECHANICS' LIENS—ALLOWANCE OF ATTORNEY'S FEES—CONSTITUTIONALITY OF STATUTE.**

   The provision of Civ. Code Alaska, § 270, authorizing the court to allow the plaintiff a reasonable attorney's fee on entry of judgment foreclosing a mechanic's or laborer's lien, is constitutional and valid.

4. **MINES AND MINERALS—PERSONS ENTITLED TO LIEN—NATURE OF WORK.**

   Where men were hired to work in making improvements on a mining claim at a certain sum per day and their board, one who devoted a part of his time to cooking for himself and the others is entitled equally with the others to a mechanic's lien for his wages.

5. **SAME—WORK ON MINING CLAIM—"LABOR DONE UPON CLAIM."**

   Work done in cleaning up and washing gold taken from a mining claim is "labor done upon the claim," for which the workmen are entitled to a lien under Civ. Code Alaska, § 262.

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska.

The appellee brought a suit to foreclose laborers' liens on side claim No. 13A, below Discovery on Cleary creek, in the Fairbanks recording district, Alaska. One of the liens was for work done by the appellee. The others were liens assigned to him by men who were engaged in the same work. The mining claim belonged to the appellant. On October 21, 1901, he leased to Robert McMillan and others that portion of the claim commencing at a point 900 feet below the upper center stake, and extending thence the full width of the claim. The lessees were to pay him 40 per cent. of the gross output of all gold extracted. The lease was never recorded. Upon May 16, 1905, McMillan sublet to Clyne, Runner, Lungvich, and Saitz the lower 458 feet of the premises leased to him by the appellant. The sublessees were to pay McMillan 40 per cent. of the gross output. The appellant, while not mentioned in the body of the lease, joined with McMillan in its execution and acknowledgment. The sublease was not filed for record until August 15, 1905, about two months after the first lien claimant, Keith, had begun work under the employment of Saitz. The appellee, together with the other lien

claimants, were colaborers, employed in the first instance by Saitz, the sublessee who was in charge of the work. They afterwards continued working under the superintendency of one Andrich, who then had charge of the work. These laborers, when they entered into the employment of the sublessees, were told nothing as to the lease under which Saitz and the others were working. They first knew that their employers were laymen after Saitz left the claim on August 29, 1904. They continued to work under Andrich, who had acquired the interests of Clyne and Lungvich. The work which they did was to construct a 1,400-foot ditch and flume and to timber shafts and to make tunnels and cross-drifts. During all the time while the appellee and his colaborers were engaged in working on the claim, the appellant was in and about the property and saw them working. He gave them no notice or intimation that he disclaimed responsibility for any liens that might arise under the law. The appellant attempted to show that the appellee and his assignors had entered into an arrangement with the appellant and Andrich to take a lease with the latter, and in consideration thereof to release all claims against the property; but the weight of the evidence is that no lease was given to the lien claimants, but that when they told him they had no money the appellant urged them to go on and get something out of the ground, if they could before it froze, in order to pay their wages. This they did, and they succeeded in having two cleanups within four or five days before the freezeup, in which they realized some $55 apiece. Of the amount they had taken out, $100 was paid to the appellant, who claimed it as a royalty; but, when the men denied his right to royalty, he informed them that he was going to use it to pay one of the men who worked there. This occurred about September 24th or 25th, after which the laborers abandoned the claim, and filed their liens, crediting the $55 as paid to each thereon. There was a conflict in the evidence on the question of working the ground after Saitz left, but the court found that the appellee and his assignors worked for the sublessees under the superintendence of Saitz, with the assent and knowledge of the appellant after Saitz and Andrich had assumed control. A decree was entered sustaining and foreclosing the liens.

The provisions of the Civil Code of Alaska applicable to the case are the following:

"Sec. 262. Every mechanic, artisan, machinist, builder contractor, lumber merchant, laborer, teamster, drayman, and other persons performing labor upon or furnishing material, of any kind to be used in the construction, development, alteration or repair, either in whole or in part, of any building, wharf, bridge, flume, mine, tunnel, fence, machinery, or aqueduct, or any structure or superstructure shall have a lien upon the same for the work or labor done or material furnished at the instance of the owner of the building or other improvement or his agent; and every contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration or repair, in whole or in part, of any building or other improvement as aforesaid shall be held to be the agent of the owner for the purposes of this Code.

"Sec. 263. The land upon which any building or other improvement as aforesaid shall be constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof (to be determined by the judgment of the court at the time of the foreclosure of such lien), and the mine on which the labor was performed or for which the material was furnished shall also be subject to the liens created by this Code if, at the time the work was commenced or the materials for the same had been commenced to be furnished, the land belonged to the person who caused the building or other improvement to be constructed, altered, or repaired; but if such person owned less than a fee-simple estate in such land, then only his interest therein shall be subject to such lien; and in case such interest shall be a leasehold interest, and the holder thereof shall have forfeited his rights thereto, the purchaser of such building or improvement and leasehold term, or so much thereof as remains unexpired at any sale under the provisions of this Code, shall be held to be the assignee of such leasehold term, and as such shall be entitled to pay the lessor all arrears of rent or other money and costs due under the lease, unless the lessor shall have

regained possession of the land and property, or obtained judgment for the possession thereof, prior to the commencement of the construction, alteration, or repair of the building or other improvement thereof; in which event the purchaser shall have the right only to remove the building or other improvement within thirty days after he shall have purchased the same; and the owner of the land shall receive the rent due him, payable out of the proceeds of the sale, according to the terms of the lease, down to the time of such removal."

"Sec. 265. Every building or other improvement mentioned in section two hundred and sixty-two, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein; and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this Code, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon the land, or upon the building or other improvement situated thereon."

T. C. West, Fernand de Journel, and H. J. Miller, for appellant. John L. McGinn, Martin L. Sullivan, Campbell, Metson, Drew, Oatman & McKenzie, and E. H. Ryan, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The principal question here presented is whether a laborer's lien created by the Alaskan Code extends to and binds the interest of the owner of a mining claim for improvements made thereon under the direction of a lessee with the owner's knowledge, and in the absence of a disclaimer of responsibility by the latter. By section 262, it is provided that one who performs labor or furnishes material for construction or development of a building, mine, etc., shall have a lien thereon for work done or material furnished at the instance of the owner of the building or other improvement, and that every contractor, subcontractor, architect, builder, or other person having charge of such construction shall be held to be the agent of the owner. The object of section 263 is to declare to what land the lien shall extend, and it provides for a lien on a leasehold interest in cases where the lessee causes the work to be done, and the lessor has no knowledge that it is being done. Section 265 relates to cases where the owner, having such knowledge, fails to give notice that he will not be responsible therefor, and it applies as well to property under lease to another as to property not leased. It refers by its terms to section 262, and declares that there shall be a lien on the mine or improvement therein referred to if the owner, being aware of the work, fails to notify the laborer that he will not be responsible. In other words, these three sections, construed together, mean that the person in charge of the work shall prima facie be deemed to be the agent of the owner, and the property of the latter shall be charged with the lien under the express provisions of section 262; that, if the person in charge is not in fact such agent, the interest of the owner shall, nevertheless, be liable for the improvement if it is constructed with his knowledge, and he fails to post the required notice disclaiming

responsibility; and that, if the work is done for a lessee of the property, liability is confined to the leasehold estate, if the owner had not knowledge of the construction of the improvement, or if, having such knowledge, he gave notice that he would not be responsible. Such a construction gives effect to all the provisions of the law, and is the construction given to similar statutes in California, Nevada, and Oregon. West Coast Lumber Co. v. Newkirk, 80 Cal. 275, 22 Pac. 231; Title Guarantee & Trust Co. v. Wrenn, 35 Or. 62, 56 Pac. 271, 76 Am. St. Rep. 454; Cross v. Tscharnig, 27 Or. 49, 39 Pac. 540; Gould v. Wise, 18 Nev. 253, 3 Pac. 30.

It is assigned as error that the court refused to permit the appellant to amend his answer by adding thereto the allegation that Clyne, Runner, Lungvich, and Saitz were necessary parties to the final determination of the suit. This application was made when the cause came on for trial on November 8, 1906. The appellee objected to the amendment for the reason that it had not been suggested when the pleadings were made up, and for the further reason that the additional parties so named in the application were then out of the jurisdiction of the court and could not be served. The complaint had been filed on February 21, 1906, and the answer had been interposed on August 16th. While the persons so named in the application would have been proper parties to the suit, they were not necessary parties to the determination of the primary question involved therein, which was whether the interest of the appellant in the mining claim should be charged with the liens. There was no abuse of the discretion lodged in the trial court, therefore, in denying the application made so late and after the additional parties so suggested had left the jurisdiction of the court and could not be served.

Error is assigned to the allowance of attorney's fees to the appellee in the judgment in the court below. Section 270 of the Civil Code of Alaska (Act Cong. June 6, 1900, c. 786, 31 Stat. 536) provides that, in all suits to enforce such liens, the court, on entering judgment for the plaintiff, shall allow as part of the costs all moneys paid for the filing and recording of the lien, and also a reasonable amount as attorney's fees. It is contended that this provision for attorney's fees is unconstitutional. Counsel for the appellant cite the recent decision of the Supreme Court of California in Builders' Supply Depot v. O'Connor, 150 Cal. 265, 88 Pac. 982, in which that court held a similar provision of the statutes of California violative of the state Constitution, as well as of the fourteenth amendment to the federal Constitution, which guaranties to every person the equal protection of the laws. But in the present case the fourteenth amendment has no application for its prohibitions are addressed to the states only. No state shall deny to "any person within its jurisdiction" the equal protection of the laws. The only obligation resting on the United States is to see that the states do not deny that right. Civil Rights Cases, 109 U. S. 3, 3 Sup. Ct. 18, 27 L. Ed. 835; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588.

That such a statute is violative of state Constitutions has also been held in Randolph v. Supply Co., 106 Ala. 501, 17 South. 721, Davidson v. Jennings, 27 Colo. 187, 60 Pac. 354, 48 L. R. A. 340, 83 Am. St. Rep.

49, and Chair Co. v. Runnels, 77 Mich. 104, 43 N. W. 1006. But, the reverse has been held in Dell v. Marvin, 41 Fla. 221, 26 South. 188, 45 L. R. A. 201, 79 Am. St. Rep. 171, Duckwall v. Jones, 156 Ind. 682, 58 N. E. 1055, 60 N. E. 797, Robertson v. Moore, 10 Idaho, 115, 77 Pac. 218, Littell v. Saulsberry, 40 Wash. 550, 82 Pac. 909, Ivall v. Willis, 17 Wash. 645, 50 Pac. 467, Title Guarantee & Trust Co. v. Wrenn, 35 Or. 62, 56 Pac. 271, 76 Am. St. Rep. 454, Wortman v. Kleinschmidt, 12 Mont. 316, 30 Pac. 280, and Vogel v. Pekoc, 157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491. In Gulf, Colorado & Sante Fé Ry. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, the Supreme Court held unconstitutional a state statute allowing attorney's fees in certain cases of suits for personal services rendered to railroad companies, or for damages for overcharges on freight or claims for stock killed or injured by any railroad company, on the ground that such a statute operates to deny the railroad company the equal protection of the law, in that it requires them to pay in certain cases attorney's fees to the parties successfully suing them, while it gives to them no like or corresponding benefit. But in the opinion in that case the court had in mind the policy of state legislation for the protection of laborers' liens, and to distinguish the case under consideration from such a case said:

"Statutes have been sustained giving special protection to the claims of laborers and mechanics, but no such idea underlies this legislation. It does not aim to protect the laborer or the mechanic alone, for its benefits are conferred upon every individual in the state, rich or poor, high or low, who has a claim of the character described. It is not a statute for the protection of particular classes of individuals supposed to need protection, but for the punishment of certain corporations on account of their delinquency."

It is the purpose of the lien law to secure "priority of payment of the price and value of work performed and materials furnished in erecting and repairing a building or other structure." Van Stone v. Stillwell & Bierce Mfg. Co., 142 U. S. 136, 12 Sup. Ct. 181, 35 L. Ed. 961. In harmony with this purpose and with the above-quoted utterance of the Supreme Court in Gulf, Colorado & Santa Fé Ry. v. Ellis, Congress has provided for the protection of the lien claimant by authorizing the court to allow him a reasonable attorney's fee in case the payment of his lien is unsuccessfully resisted. We find no ground for saying that such a law is unconstitutional.

It is contended that a portion of the work for which the liens were claimed was work for which no lien attaches under the law. It appeared that all of the men were hired at the usual rate of employment, which was $5 a day and board. One of them devoted a portion of his time to cooking for himself and the others, and the remainder of his time to work on the shafts and tunnels. It is urged, under the authority of McCormick v. Los Angeles City Water Co. et al., 40 Cal. 185, that for the time so devoted to cooking there could be no lien on the mining claim. We think the facts in the present case distinguish it from the case so cited. In that case, the cook was employed by one who had a contract to do a specific work for an agreed sum, and there was ground for holding that the expense of the cooking was not chargeable against the property. In the present

case, men were hired to work on the premises for a fixed price and their board. If they had been obliged to employ another to do their cooking, it is evident that it would have been necessary to increase their wages by the amount of the expense so incurred. The mining property received the benefit therefore of all the work done by all the men, and, in the theory of the lien law, the value of the mining property was enhanced by the whole thereof. In Young v. French, 35 Wis. 111, and Winslow et al. v. Urquhart, 39 Wis. 261, it was held that one who cooks for the men at work on logs, under a logging contract, is entitled to a lien for his wages under a statute which gives to every person who shall furnish any supplies or do or perform any labor or services, in cutting, felling, or hauling logs or timber, a lien on them for the amount due therefor. In Lybrandt v. Eberly, 36 Pa. 347, it was held that, if a mechanic engages hands at a certain sum per diem and their board, he may include in his lien the boarding of the workmen, and the same was held in Bangs v. Berg, 82 Iowa, 350, 48 N. W. 90, where it was a part of the contract that the owner of the property to be improved should board the hands and team engaged in the work.

Without merit, also, is the contention that the lien claimants should have no lien for the time and labor devoted to cleaning up and washing the gold taken out of the mine. This was labor done upon the mine within the meaning of section 262.

The decree is affirmed.