## TURNER v. ENSTROM et al.

(Fourth Division. Fairbanks. May 16, 1914.)

No. 1946.

1. MECHANICS' LIENS ⬅137(1)—MINES AND MINERALS.

While the act of Congress applicable to mechanics' liens in Alaska requires that the notice of the lien recorded shall contain the names of the owners, or reputed owners, of the ground upon which the lien is claimed, it is well established that failure to include the names of all the owners does not render the notice void, but that it may be enforced against the owners named, the only effect of the omission of the name of the omitted owner being to exempt his interest from the operation of the lien. The omission of the name of the co-owner from the lien notice does not render the lien ineffective as against the other owners.

2. MECHANICS' LIENS ⬅263(1)—ENFORCEMENT—PARTIES.

The omission of the name of a co-owner from the notice of a mechanic's lien does not render the lien void as against the other owners named. The omitted owner is not a necessary party to. the action to foreclose the lien. His interest in the property cannot be bound by any judgment given in the foreclosure suit from which he was omitted.

3. MINES AND MINERALS ⬅112(2)—MECHANICS' LIENS—IMPROVEMENT OF THE PROPERTY.

In Alaska a lien can be had for labor performed upon a mine only when it tends to the improvement or development of the mine. Work done in the course of actual mining operations, involving the extraction of gold, not tending to the development or improvement of the mine, but rather to the lessening of the value by the extraction of the gold therefrom, is not lienable under the law.

―――――――――

⬅See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MECHANICS' LIENS ⬥78—MINES AND MINERALS ⬥113—NOTICE
OF NONLIABILITY.

The owner of a mining claim leased it to operators. The
operators worked the claim and their employés filed liens. The
lessor and owner posted two notices of nonliability for the debts
of the lessees on the property. The notices were not kept con-
tinuously posted, and the lienors denied they saw them. *Held*,
if the notices were actually posted in the first place in good-faith
compliance with the statute, and within its terms, it is not neces-
sary to show they were continuously maintained.

This is an action to foreclose laborers' liens upon the Eva
Association placer mining claim, situate on Ester creek, in
the Fairbanks recording district, the plaintiff claiming a lien
on behalf of himself for labor performed in the development
of this mining claim and also as the assignee of two other lien
claimants.

The plaintiff, in his first cause of action, alleges that the
defendants Wheeler, Beegler, and Wagner were, and now are,
the owners and reputed owners of the claim, and that the
labor was performed under an agreement between the plain-
tiff and defendants O. Enstrom and L. Enstrom, copartners
under the name of Enstrom Bros., lessees of the mining claim;
said lessees acting for themselves and as agents for the own-
ers in making the agreement.

Judgment is asked against all the defendants for the amount
claimed in the lien, besides the sum of $15 for preparing the
lien, $3.30 for the recording thereof, and an attorney's fee
of $350 for the prosecution of this action; and judgment is
also asked for similar amounts upon the assigned causes of
action.

The defendants Enstrom Bros. have not resisted the ac-
tion, but the defendants Wheeler, Beegler, and Wagner have
denied any liability, upon the grounds that the labor for which
liens are claimed was not performed in the prospecting, de-
velopment, or improvement of the mining claim; that the
contract therefor was entered into solely with the lessees;
and, further, that prior to the performance of any labor upon
the mining claim these defendants caused to be posted in con-
spicuous places upon the mining claim notices denying any
liability for labor on the part of the owners. These defend-
ants admit that they are part owners of the ground, but al-

lege that one C. Wichman is also the owner of an undivided. interest therein, and is a necessary party to the action.

Morton E. Stevens, of Fairbanks, for plaintiff.

L. K. Pratt & Son, of Fairbanks, for defendants.

FULLER, District Judge. The liens are claimed, and this action to foreclose them is brought, under the provisions of the Act of Congress of June 6, 1900, 31 Stat. 534, c. 786 (Civil Code, §§ 262–275; Comp. Laws Alaska 1913, §§ 691– 704). While this act requires that the notice of lien recorded shall contain the names of the owners, or reputed owners,. of the ground upon which the lien is claimed, it is well established that failure to include all of the owners does not render the notice invalid, but that it may be enforced against the owners named; the only effect of the omission of the name of any owner being to exempt his interest from the operation of the lien. The omission of Wichman's name, therefore,. from the notices of lien, does not render the liens ineffective, as against the other owners, and he is not a necessary party to this action, although, of course, any interest he may have· in the property could not be bound by any judgment given herein. The law provides:

"That every contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration, or repair, in whole or in part, of any building or other improvement as aforesaid, shall be held to be the agent of the owner for the purposes of this. Code." Comp. Laws 1913, § 691.

And under other provisions of the act any lienable improvement made upon lands is held to have been made at the· instance of the owner, if made with such owner's knowledge,. and he does not duly post a notice disclaiming liability. It is under these provisions, evidently, that the plaintiff alleges in his complaint that his agreement of employment was made with Enstrom Bros. as agent of the other defendants; and proof that the labor was performed, or improvements upon the property were made, with the knowledge of such owners,. would be sufficient proof of agency on the part of Enstrom Bros. to bind the owners, unless such owners are able to contradict the effect of this presumption by proof of giving notice of nonliability, as required by the statute. The evidence sufficiently established the fact that labor was performed to·

the amount alleged in the notices of lien and in the complaint, under an agreement with Enstrom Bros., and that during all of the·time the work was being performed Enstrom Bros. were the lessees of a part of the mining claim above mentioned, and that the owners had knowledge of the performance of the work. All the work performed by the plaintiff himself was in and about the excavation and running of drifts and crosscuts, repair work about the shaft and cribbing, and some cribbing on top of the shaft, timbering the tunnels and crosscuts, putting in a car station and laying track, excepting some 10 or 12 days, while he was employed in sluicing dirt taken from the tunnels, and some 2 weeks while general mining operations were being carried on. All the work performed by the parties whose liens have been assigned to the plaintiff was in connection with sinking a shaft, building boiler and messhouses, and running and timbering tunnels and ·crosscuts.

While it has been held that under the act in question laborers have a lien·for "labor devoted to cleaning up and washing the gold taken out of the mine," and that such labor is done upon a mine within the meaning of this act (Cascaden v. Wimbish, 161 Fed. 246, 88 C. C. A. 277), it is now well settled that under this act a lien can be had for labor performed upon a mine only when it tends to the improvement or development of the mine, and that work done in the course of actual mining operations, involving the extraction of gold, not tending to the development or improvement of the mine, but rather to the lessening of its value by the extraction of gold therefrom, is not lienable under this law (Pioneer Mining Co. v. Delamotte, 185 Fed. 754, 108 C. C. A. 90; Andrews v. Ladd, 188 Fed. 313, 110 C. C. A. 291). While all labor done in sinking shafts and running tunnels, preparatory to drifting and hoisting, may, in a sense, be considered as mining, yet the distinction seems to be clearly established between such work and the work of drifting, hoisting, and washing bodies of pay dirt after the preliminary development work has been done. Under this view, the plaintiff would be entitled to a lien for all of the labor performed by him, except that done in connection with the sluicing above ground for a period of about 26 days; and the other lien claimants would be entitled to a lien claim for all labor performed by them. The

evidence also showed that the sums mentioned in the complaint were expended for preparing and filing the liens, and that an attorney's fee of $750 would be reasonable, in view of all the circumstances surrounding this case, should a judgment be recovered against all the defendants. The defendants Wheeler, Beegler, and Wagner, however, claim that they are not liable, by reason of having posted notices disclaiming any liability for any labor contracted for by Enstrom Bros. prior to the commencement of any such work. The provisions of the statute concerning this are as follows:

"Every building or other improvement mentioned in section six hundred and ninety-one, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein; and the interest owned or claimed shall be subject to any lien filed in accordance with * * * this Code, unless such owner or person having or claiming any interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration, or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon the land, or upon the building or other improvement situated thereon." Section 694, Comp. Laws Alaska 1913.

Wheeler testified that early in September, 1912, he posted notices which fully complied with this section, on behalf of himself and his co-owners, one some 30 or 40 feet from where the working shaft subsequently was sunk, and one between 700 and 800 feet above there, on the part of the mining claim leased to Enstrom Bros., and some 30 or 40 feet from the traveled road. There was also the evidence of several others to the effect that they had seen such notices, although there was some dispute in the evidence as to whether the upper notice was on the part leased to Enstrom Bros. or not. Both of the Enstrom brothers testified to the notice near the working shaft, and that it remained in position until some time in the latter part of October. The most positive testimony as to the date when it was last seen is that of Louis Enstrom, who says that it was there on October 18th, and that the notice had disappeared some five or six days later, when he returned to the premises, after having been absent for that time. The defendant Beegler was positive that he saw this notice as late as November, but was unable to give any rea-

son for fixing the date as the first part of November, rather than the latter part of October. The lease from the owners to Enstrom Bros. was executed August 15, 1912, and some work seems to have been done by them upon the claims in the way of clearing brush, starting of shaft, and general work upon the surface of the ground, in September and October; but no laborers seem to have been employed until about November 1st. Two of the lien claimants whose claims are involved in this action began work at that time, while the plaintiff himself did not begin to work upon the claim until March 8, 1913. None of these lien claimants ever saw any notice of nonliability, on the part of the owners, upon the claim; and there was testimony, also, of several others who were upon the claim, during the time development and mining operations were carried on there, that no notices were to be seen at any place upon the claim. The statute requires that an owner, in order to relieve himself from liability under the statute, must, within three days after he shall have obtained knowledge of the work, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon the land, or upon the building or other improvement situated thereon. The evidence is conclusive that notices were posted by the owners, and I am satisfied that the notice posted near the working shaft was in a "conspicuous place," although I do not think that the same could be said concerning the upper notice, and if that were the only notice that had been posted upon the ground it would not have been sufficient. Whether or not it was upon the part of claim leased to Enstrom Bros., it was, at any rate, at some distance from a part of the ground where laborers usually went; and, although not far from a traveled road, it was at a place not likely to be passed by laborers upon the claim. It appears that most of the travel along this road was to and from the town of Ester, and this notice was placed some distance from the messhouse, boilerhouse, and shaft, and on the opposite side from the town. The plaintiff seriously contends that the mere posting of the notice was not sufficient, but that, inasmuch as the purpose of such posting is to give actual knowledge to persons performing labor upon the ground, such notice must be kept posted at all times. The statute, however, does not require this. The matter has

been definitely passed upon by the Supreme Court of the state of Oregon, in construing this same section:

"The statute requires that the owner shall, within three days after he has knowledge of the fact that alterations or repairs are being made, give notice that he will not be responsible for the same by posting a notice in writing to that effect in some conspicuous place on the land or building or other improvement situate thereon. Section 5643, B. & C. Comp. The form and subject-matter of the notice in question are obviously sufficient, but the inquiry is whether it was kept in place a sufficient length of time, so that it might be said that the owner gave notice of his refusal to be responsible for the improvements. * * * The statutory manner of giving notice is by posting a written announcement; presuming, no doubt, that when once posted it will remain a sufficient length of time to impart knowledge to the persons it is intended to affect. The language is not to keep it posted, but to give notice by posting, and when once posted it will fulfill the mandate of the statute. Of course, if the notice were torn down immediately, or very soon after, by the one who posted it, there would be an apparent attempt to evade the statutory injunction, and the act would probably not be accounted as giving notice by posting; but, if posted in good faith, with the intent and purpose that it should remain as long as a notice would remain in a place of that nature under ordinary conditions, it would seem that the intendment of the statute had been observed and the notice given." Marshall v. Cardinell, 46 Or. 410, 80 Pac. 653.

As at least one notice, in compliance with the statute, was posted in a conspicuous place upon the mining claim by the owners, it seems that was sufficient to relieve them from the liability sought to be imposed upon them in this action. As to the defendants Wheeler, Beegler, and Wagner, the action may be dismissed, and a decree entered against Enstrom Bros. for the amount of plaintiff's claims for labor, preparing and filing notices of liens, and costs, including an attorney's fee of $250.