472 P.2d 979

**Herold BRITO and Charllene Brito, his wife, and Federal National Mortgage Association, Defendants-Appellants,**

v.

**James O. CARPENTER, Defendant-Appellee.**

**No. 8998.**

Supreme Court of New Mexico.

July 27, 1970.

Hines & Sullivan, George F. Stevens, Albuquerque, for defendants-appellants.

McNeany, Rose & Sholer, Albuquerque, for defendant-appellee.

OPINION

WATSON, Justice.

On February 12, 1966, Mock Homes, Inc., an Albuquerque subdivision general

contractor, completed a home on Lot 30, Block 7, Unit 2, Desert Terrace Subdivision, and sold it to Herold and Charllene Brito, who executed thereon a first mortgage now held by Federal National Mortgage Association.

After making the sale to the Britos, but prior to the time within which mechanics and materialmen would be permitted to file claims of lien for non-payment, Mock Homes, Inc. filed a petition in bankruptcy. As a consequence of this bankruptcy, lien claims were filed by materialmen and subcontractors who allegedly furnished materials and performed work in the Mock Homes development. One of these was that of appellee James O. Carpenter, filed on May 13, 1966. Subsequently, suits in foreclosure were filed against *each* individual lot upon which construction had been started in the subdivision.

The matter now before us is an appeal from the judgment of the trial court foreclosing the Carpenter lien as superior to the interests of the Britos and Federal National on Carpenter's cross-complaint in the action brought by Jack Carlson Dry-Wall Company, another subcontractor under Mock Homes. Carlson's complaint was filed on November 28, 1966, in the District Court of Bernalillo County. It named, among others, the Britos and Federal National as defendants, along with Mr. Carpenter and seven other lien claimants. By this complaint, which was numbered A23814, the plaintiff (Carlson) claimed a lien against Lot 30, Block 7, as superior to the Britos' ownership and the claimed liens of the other defendants and sought a foreclosure sale of the premises to satisfy his lien. The prayer of the complaint also asked "[t]hat the Defendants and all persons claiming under them, or any of them, be barred and foreclosed of any right or claim in said premises, forever." Appellants Britos and Federal National were duly served in this action.

Because of the number of lien claims filed as a result of Mock Homes' bankruptcy, and for the purpose of expediting pre-trial conferences, the cases were consolidated and later divided into two groups: Group I involved "construction loan cases" and was given the docket number 23258; Group II, involving the "home owner cases," was given docket number 23377, and the instant case was incorporated within the latter group.

On February 1, 1967, appellee Carpenter filed a "Responsive Pleading" in Cause "No. 23258 et seq.—Consolidated" (the Group I cases) in which he set forth claims of liens in six other causes by referring to their cause number and the monetary amount of the liens, but he did not mention Cause No. A23814 (the instant case) or the lien amount in this cause. This case had been consolidated under Group II only, and thus, in addition to the fact that his pleading made no reference to the instant case, it was not properly filed.

On October 11, 1967, the court granted appellee Carpenter's ex parte motion to amend his "Responsive Pleading" by interlineation by adding seven other lien claims by reference to cause numbers and amounts; among these was "No. 23814— $625.00." Although hardly a satisfactory cross-complaint, it now would have been possible, by examining both groups of consolidated pleadings, to ascertain that appellee sought to foreclose a lien against appellants.

On February 3, 1969, Carpenter filed an "Amended Answer, Cross-claim and Counterclaim," in Cause No. 23814, which by that time had been severed from the consolidation. In this pleading, for the first time, he described the property upon which he claimed to have a lien which is superior to that of the plaintiff and the several defendants.

For their Point I, appellants claim error in the court's refusal to dismiss appellee's cross-complaint for failure to file an action within one year. The applicable statute of limitations, § 61–2–9, N.M.S.A., 1953 Comp., reads as follows:

"No lien provided for in this article binds any building, mining claim, im-

provement or structure for a longer period than one [1] year after the same has been filed,· *unless proceedings be commenced in a proper court within that time to enforce the same,* * * *." (Emphasis added.)

█ Even if the "Responsive Pleading" of February 1, 1967, had been filed in the proper cause or consolidated cause, it would not logically have been recognized as making a claim of lien against Lot 30, Block 7, the property involved here, since neither the lot nor the cause number concerning that property was even mentioned. Not until the ex parte amendment of October 11, 1967, would it have been possible to ascertain from the pleadings that appellee herein intended to enforce his lien against the Britos' home. Since the original "Responsive Pleading" of February 1, 1967, could not be considered as setting forth or attempting to set forth a claim of lien against the Britos' home, because there was no mention of their property or the cause number concerning that property, the amendment of October 11, 1967, could not relate back to the February 1 date. Rule 15(c) [§ 21-1-1(15) (c), N.M.S.A., 1953 Comp.]. The test of whether an amended pleading relates back to the original pleading is whether a "claim for relief" was made or attempted within the statutory period. Scott v. Newsom, 74 N.M. 399, 394 P.2d 253 (1964). Not until October 11, 1967, one year and five months after the filing of appellee's lien (May 13, 1966), did appellee properly commence proceedings to enforce his lien against Lot 30 or to claim relief against the appellants.

Appellee points out that § 61–2–9, supra, does not specifically require that appellee himself commence the proceedings. He contends that under the "Omnibus Theory" adopted in Wisconsin, Oregon, and West Virginia, the timely joining of appellee, as a defendant lien claimant in the suit brought by Carlson, along with the appellants who were duly served with the complaint, satisfied the statute. The statutes in these three states, which require or permit the joining of all parties in order to avoid a multiplicity of suits, are relied upon for this theory. Erickson v. Patterson, 191 Wis. 628, 211 N.W. 775 (1927); Title Guarantee & Trust Co. v. Wrenn, 35 Or. 62, 56 P. 271 (1899); Amato v. Hall, 115 W.Va. 79, 174 S.E. 686 (1934). But see Grimm v. Rhoades, 129 Ind.App. 1, 149 N.E.2d 847 (1958), where under a permissive statute similar to ours the Indiana court held that the cross-complaint must be filed within the one-year period.

New Mexico's statute concerning joinder of parties in mechanics' lien actions, § 61–2–13, N.M.S.A., 1953 Comp., does not require that all claimants be joined. It reads in part:

"Any number of persons claiming liens *may* join in the same action, and when separate actions are commenced the court may consolidate them. * * *" (Emphasis added.)

Our mechanics' lien statutes were copied from California, and we have often in the past followed the California courts in interpreting our statutes. Mutual Building & Loan Ass'n of Santa Fe v. Fidel, 78 N.M. 673, 437 P.2d 134 (1968); Lembke Construction Co. v. J. D. Coggins Company, 72 N.M. 259, 382 P.2d 983 (1963). Thus we again turn to California decisions to guide us in deciding whether appellee can be considered as having timely commenced his action.

The case of Graham v. California Drilling Exploration Co., 49 Cal.App.2d 522, 122 P.2d 88 (1942), presented a situation quite similar to ours. There, the appellee, a labor and materialsman lien claimant, had been joined as a defendant and had filed an answer containing a second and separate affirmative defense which sought foreclosure of his own lien against the owners who were also made defendants. It was claimed that appellee had not commenced his action within the statutory period. Section 1190 of the California Code of Civil Procedure then read in part:

"No lien provided for in this chapter binds any property for a longer period

than ninety days after the same has been filed, unless proceedings be commenced in a proper court * * * to enforce the same." [1]

And § 1195 of the Code of Civil Procedure read, in part, as follows:

"ANY NUMBER OF LIENHOLDERS MAY JOIN IN ACTION. Any number of persons claiming liens may join in the same action, and when separate actions are commenced, the court may consolidate them. * * *" [2]

Although the plaintiff, Graham, had filed the action within the 90-day period required by the California Code, the appellee's (respondent's) answer, in which he sought the affirmative relief of foreclosure of his lien, was not filed until 122 days after the filing of his lien. On appeal the California appeals court said:

"Respondent, in answer to this contention of appellants, asserts that the date of the filing of plaintiff's complaint operated 'to suspend the statute of limitations as to any cause, demand or counterclaim which existed in favor of a defendant at the time of such commencement' and that inasmuch as the same property is involved in respondent's answer or cross-complaint as was involved in plaintiff's original complaint the respondent was entitled to have the provision of section 1190, hereinbefore quoted, suspended.

"* * *.

"In the case at bar, plaintiff Graham commenced an action against defendants to foreclose a mechanic's lien for certain

materials and equipment furnished to defendants other than respondent, and respondent was joined as a person claiming some interest in the premises or improvement. In setting forth his claim of lien in his answer and seeking the foreclosure thereof respondent was not asserting any counterclaim or set-off or cause of action against plaintiff, but was seeking to enforce a lien as against his codefendants, against whom the original action had been commenced by plaintiff.

"Section 1195 of the Code of Civil Procedure provides that two mechanic's liens against the same property can be consolidated and tried in one action but this does not mean that the foreclosure of each lien does not involve a separate cause of action, complete and independent in itself, to which cause of action any defenses which existed at the time it was filed may be set up. The mere fact that the law permits different liens to be established and enforced in the same action does not change the various causes of action from the nature of independent actions, and there is nothing in any of the decisions cited by respondent which holds to the contrary. Each cause of action for the foreclosure of a mechanic's lien, whether set forth in a complaint, cross-complaint or complaint in intervention, must stand upon its own allegations and must be considered as having been commenced on the date it was filed.

"* * *.

"From the foregoing authorities we think it is clear that respondent's action

---

1. At the time of our adoption of the statute in 1880, this section, as enacted on March 11, 1872, read:

   "TIME OF CONTINUANCE OF LIEN. No lien provided for in this chapter binds any building, mining claim, improvement, or structure, for a longer period than ninety days after the same has been filed, unless proceedings be commenced in a proper court within that time to enforce the same; or, if a credit be given, then ninety days after the expiration of such credit; but no lien continues in

   force for a longer time than two years from the time the work is completed, by any agreement to give credit." 3 Kerr's Cyc. Codes of California § 1190 (1909).

2. This sentence has apparently remained unchanged since the enactment of the section on March 11, 1872, down to the reenactment of the section as § 1199.1 in 1951. Cal.Civ.Pro.Code §§ 1195, 1199.1 (West 1955); II Cal.Civ.Pro. Code § 1195 (Fairall 1916); 3 Kerr's Cyc. Codes of California § 1195 (1909).

to establish and enforce his mechanic's lien against his codefendants, appellants herein, must be considered as having been commenced on April 20, 1938, and the date on which his answer or cross-complaint was filed, and, in view of the fact that that date was more than ninety days after the recording of his claim of lien, is barred by section 1190 of the Code of Civil Procedure. It follows, therefore, that the court below erred in decreeing the foreclosure of respondent's mechanic's lien." 122 P.2d at 90, 91.

In Callaway v. Ryan, 67 N.M. 283, 354 P.2d 999 (1960), we held that the filing and service of a motion to intervene, accompanied by a pleading setting forth the claim, was the commencement of a proceeding for the mechanic's lien there stated. By analogy, it would appear that with regard to a cross-complaint, the action is commenced with the filing of the cross-complaint, and not before.

We hold, therefore, that under our present mechanics' lien statutes the pleading seeking the enforcement of a lien against the property must be filed in the proper court within one year from the date of filing the lien, and that since no such pleading was filed to enforce appellee's lien in this case within that time the judgment must be reversed.

We need not consider the questions of lack of service or the timeliness of service also raised by the appellants. As to the allowance of attorneys' fees to appellee, this is only authorized "as part of the costs," § 61–2–13, supra. If the action was not timely for the relief sought, it must be dismissed in toto, including costs and attorney fees, and the costs reassessed pursuant to Rule 54(d) [§ 21–1–1(54) (d), N.M.S. A., 1953 Comp.].

The judgment of the trial court is reversed and remanded with instructions to dismiss appellee's cross-complaint against appellants.

It is so ordered.

SISK and McKENNA, JJ., concur.